**TEXAS & NEW ORLEANS RAILROAD COMPANY, Appellant,**

v.

**R. E. HAYES, Appellee.**

No. 10352.

Court of Civil Appeals of Texas.

Austin.

Nov. 30, 1955.

Rehearing Denied Dec. 14, 1955.

Baker, Botts, Andrews & Shepherd, John F. Heard, Robert L. Steely, Houston, for appellant.

Raymond L. McDermott, Albert P. Jones, Helm & Jones, Houston, for appellee.

GRAY, Justice.

Appellee sued appellant for damages for personal injuries under the Federal Employers' Liability Act, § 1, as amended in 1939, 45 U.S.C.A. § 51. At a jury trial appellee recovered a judgment for $35,675.

Appellee was an employee of appellant and while in the process of switching cars in appellant's Englewood Yards in Houston he fell from a moving railroad car and was injured. He alleged that he had gotten on a gondola car (commonly called a coal car); that he took hold of a grabiron to enable him to ride the car and that there was grease on the grabiron which caused him to fall and sustain the injuries complained of. The accident occurred at about 8:30 p. m. December 13, 1952.

Appellee alleged that appellant was negligent in permitting the grease to be on the grabiron at the time of the accident and that such negligence was a proximate cause of the injuries sustained.

On the jury's verdict and a stipulation of the parties as to part of the medical expense incurred by appellee a judgment for appellee was entered.

In answer to special issues the jury found that: 1, at the time in question there was a greasy substance on the grabiron; 2, it was a condition which could have been ascertained by proper inspection; 3, appellant failed to make a proper inspection; 4, such failure was a proximate cause of the injuries sustained; 5, appellant permitted the greasy substance to accumulate on the grabiron; 6, appellant allowed the substance to remain on the grabiron for such a period of time that in the exercise of ordinary care it should have been discovered and removed; 7, allowing the greasy substance to be on the grabiron was negligence; 8, such negligence was a proximate cause of the injuries; 9, the greasy substance on the grabiron rendered it dangerous and unsafe; 10, appellant failed to warn appellee of such dangerous and unsafe condition; 11, such failure was negligence; 12, such negligence was a proximate cause of the injuries; 13, appellee did not fail to grasp the upper grabiron securely before releasing the lower grabiron; issues 14 and 15 were conditionally submitted if 13 was answered affirmatively and if 15 was answered the jury was told to answer 16 which inquired what percentage of the negligence causing the accident was attributable to appellee. Issues 14, 15 and 16 were not answered. By issue 17 the jury found that the injuries were not the result of an unavoidable accident; by its answer to issue 18 the jury found appellee's damages

to be $35,000, and by its answer to issue 19 found the medical expenses to be incurred in the future to be $500.

The parties stipulated that in the event appellee recovered on the issue of appellant's liability then $175 should be added for past medical expenses incurred by appellee. The hospital bill, the cost of the operation on appellee's ankle and all costs for treatment by the first doctor appear to have been paid by the brotherhood of which appellee was a member, the $175 being paid to a second doctor.

Appellant here presents 13 points. Point 1 complains that the trial court erred in overruling appellant's motion for an instructed verdict because there was no evidence, or insufficient evidence, to raise any issue of fact as to its negligence; points 2, 3, 4, 5, 6, 7, 8 and 9 complain that the trial court erred in submitting issues 2, 3, 4, 5, 6, 7, 10 and 11 respectively because there was no evidence, or insufficient evidence, to raise such issues; point 10 complains that the trial court erred in overruling appellant's motion to disregard the jury's answers to issues 2, 3, 4, 5, 6, 7, 8, 10 and 11, its motion for judgment non obstante veredicto and its motion for a new trial because there was no evidence, or insufficient evidence, to raise fact issues of appellant's negligence; point 11 complains of the trial court's refusal to submit requested issues A, B & C; point 12 complains that the trial court erred in entering judgment for $35,675 and overruling appellant's motion for new trial because there was no evidence to support the jury's answer to issue 18, and point 13 complains that the trial court erred in entering judgment for $35,675 and overruling appellant's motion for new trial because: (a) there was insufficient evidence to support the jury's answer to issue 18; (b) such answer was highly excessive and against the great weight and overwhelming preponderance of the evidence, and (c) such answer shows the jury was influenced by prejudice and other improper motives.

Appellant has grouped points 1 to 10 both inclusive.

At the time of the accident appellee was 33 years of age, he was in good health, he had worked for appellant as a yardman for about five years and was capable of performing the work in which he was engaged. He was then earning an average of approximately $417.35 per month, he was released by his doctor to return to work and did so return September 15 or 17, 1953. He had lost 9 months and 4 days from his work together with his pay for that period. At the time of the trial he was 35 years of age and had a life expectancy of 33.44 years.

On December 13, 1952, appellee was working from 3 o'clock p. m. to 11 o'clock p. m. and was working with a switching crew in appellant's Englewood Yards. This crew had taken a string of cars from appellant's receiving track in Englewood Yards and at the time of the accident the engine was moving some 4 to 6 cars at a speed of 3 or 4 miles per hour. In the performance of his duties appellee, in attempting to get on the gondola car, swung onto the steel ladder on the side of the car. (This ladder consisted of a stirrup which was above the track and some distance above the ground on which appellee was and above the stirrup were grabirons to enable a person to climb up the side of the car.) When appellee swung onto the car he was in a stooped position and, in order to enable him to ride it, he reached for a grabiron above his head, his hand slipped and caused him to fall to the ground and sustain the injuries complained of,—multiple fractures of the left ankle. Appellee said that at the time he was wearing thin cotton gloves and that when his hand slipped he felt a "clump or lump of grease" on the grabiron.

It is not controverted that appellee sustained injuries while in the course of his employment but appellant says: "The record is barren of any indication of how the grease got on the grabiron, who put it there, or how long it had been there."

Appellant operates two yards in Houston: Hardy Street and Englewood. Cars are brought to the yards by incoming trains and are placed on the receiving tracks. In the

daytime a blue flag is placed on the train and at night a blue lantern and the switching crew does not touch the train or cars until the blue flag or lantern has been removed. Inspectors inspect each and every car in the train and if there is found any defect rendering any car unsafe a bad order card is placed on the car and it is removed to the repair track. (After a car has been repaired it is again inspected.) The inspection of the cars is done by regularly employed inspectors and it is their duty to inspect the cars including an inspection of the grabirons. If grease is found on a grabiron it is the duty of the inspectors to put a bad order card on the car or remove the grease. Grease on a grabiron is recognized to be a dangerous hazard and to render a car not safe. After the cars are inspected and found to be free of hazards they are delivered into the charge of the yard master and he in turn gives orders to the switching crew to proceed to break up the train as directed. This crew however has no duty to inspect the cars.

Appellant's yards are busy and it is important that the receiving tracks be cleared promptly in order that other trains may not be kept waiting to come in the yards and crews are on duty twenty-four hours a day. The inspecting crew inspects a train of cars in a matter of a few minutes to 45 minutes. After the inspection has been completed it is a period of time ranging from a few minutes to more than an hour before the switching crew receives the cars.

Appellant employs guards to keep unauthorized persons out of its yards and after a car is brought into the yards persons other than appellant's employees are not authorized to be on or around the cars. There is no evidence that trespassers or unauthorized persons were in the yards.

After the inspection has been completed there is no occasion for anyone to climb on the cars prior to the switching operations. After the inspection of the car in question appellee was the only person who

had occasion to climb on it prior to the accident.

It may be conceded that the evidence does not positively show whether the car in question was first brought into the Hardy Street Yard or Englewood. However the inspection of incoming trains at the two yards appears to be the same. If a car is inspected at Hardy Street and moved to Englewood it is not again inspected but it is received by the switching crew at Englewood on orders of the yard master. Be all this as it may the switching crew has no authority to receive a car except on order of the yard master and does not make further inspection. The car in question was so delivered.

Appellant did not call as witnesses any inspectors who inspected the car in question, prior to the accident.

Immediately after the accident appellant was in severe pain and was removed to a hospital, the next morning his ankle was set but this was not satisfactory and an operation was afterwards performed. He remained in the hospital eighteen days and was released with a cast on his left leg which extended to his knee and which he wore for three months. After the cast was removed he walked with crutches and a cane. His left ankle was larger than his right, he limped when he walked and suffered from a pain in the center of his back below the belt line. A doctor said the back pain was caused by the limp and prescribed that he sleep on a hard mattress, using a heating pad and exercises. Also he used braces in his shoes.

Appellant testified that at the time of the trial his ankle and back still bothered him and that he had difficulty in walking. He estimated that during an eight hour period of duty his job required him to walk a couple of miles; that his ankle and back still pained and bothered him; that his ankle and back were not getting any better and that he might have to retire from railroad work because he would not be able "to take it." He said that he tried to avoid riding cars and that because of his

seniority he could pick jobs where he could do most of his work without having to ride cars. He also said it was necessary for him to watch himself very closely and that he did not think he could hold a job that required him to jump off and on cars. He testified that he had a very limited education; that he had to work in order to make a living for himself and his family and that he had no choice but to stay on the job as long as he could. Other employees assisted him in carrying on his duties. Since returning to his job appellee said he had lost a lot of time from work because of his injuries, and that because of his seniority he would be eligible for a foreman's job at additional pay but that he did not believe he would be able to hold it because of his injuries.

Other witnesses testified and supported appellee's testimony and his doctor supported him as to the extent of his injuries, their effect and stated that in his opinion there was no prospect for improvement in the future.

As we understand appellant's brief it does not argue the grease was not on the grab-iron nor that it did not cause appellee to fall and to sustain injuries. It does say that it is not shown that appellant was negligent in allowing the grease to be there and cites: Missouri, K. & T. Railway Co. v. Jones, 103 Tex. 187, 125 S.W. 309; Hopson v. Gulf Oil Corp., 150 Tex. 1, 237 S.W.2d 352, and Texas & N. O. Ry. Co. v. Pool, Tex.Civ.App., 263 S.W.2d 582, no writ history.

In the Jones case a switchman stepped off of a slowly moving engine in the railroad yards and in doing so stepped on an iron bolt which rolled under his foot, caused him to fall and sustain injuries. There was evidence that it was the duty of a foreman and a trackwalker to look after the condition of the tracks and to keep them clear of such obstructions. Each of them testified that less than an hour before the accident he passed over the point where the bolt was found and that it was his duty to keep a lookout for such objects and that if one had been there he would

have seen it and removed it. The Court said [103 Tex. 187, 125 S.W. 310]:

"We cannot bring our minds to the conclusion that there is here any evidence to prove that any one of the defendant's employes was guilty of negligence. In order to constitute it, the bolt must have been put on the track by some employe, or its presence there must have been known to some of them before the accident, or must have continued long enough to justify the inference that the failure to know it was due to a want of the proper care."

In its discussion of the evidence the Court said:

"Does the fact that a half hour or so after they passed the bolt was found upon the track justify an inference of negligence of which there is no other evidence? Undoubtedly a condition of a track might be such that with respect to it such a question ought to be answered in the affirmative; but that cannot be true of this condition, which might come about at one moment as well as another and by the action of others as well as by that of defendant's servants. Any person, child or adult, passing the point, idly handling or playing with and dropping the bolt, might, in an instant, have put it in the place in which alone it was dangerous. Other ways in which it might have come there might easily be supposed. It is true that the evidence does not especially indicate any such explanation of its presence, but the point is that that which happened may be as easily accounted for in this way as by a supposition of negligence on the part of the defendant."

and that

"It cannot be presumed without evidence that the defendant had in fact such complete control of every part of its yards and of every bolt of this kind of which it was the owner as to make it reasonable to infer that its servants, contrary to their duty, either

put this bolt at this place, or negligently allowed it to be there when they knew or should have known of its presence, rather than that it may have come to be there without their fault."

The facts in the Jones case and the facts here are distinctly different. Here appellant had complete control of its yards and employed guards to keep strangers out and there is no evidence of the presence of strangers in the yards. Its rules did not permit the swtiching crew to move the cars until directed to do so by the yard master after their inspection which included an inspection of the grabiron and the removal of grease if it was present on the irons. Further the evidence shows that from the time the inspection was completed until the time appellee attempted to climb on the car no person had occasion to climb on it. The evidence here places the car in question in the exclusive control of appellant and excludes any reasonable accounting for the presence of the grease on the iron except the negligence of appellant's employees, at least their negligent failure to remove it.

In the Hopson case, supra, a seaman in the performance of his duties on a tanker was emptying drums of oil into a pipe on the deck that carried the oil to the engine room. While so doing he slipped on a spot of grease and was injured. In disposing of the issue as to the Oil Company's negligence in allowing the grease to accumulate on the deck the Court said [150 Tex. 1, 237 S.W.2d 357]:

"There is no evidence tending to prove that any employee of respondent, acting within the scope of his employment, either deliberately or negligently placed or dropped the grease on the deck, and there is no evidence that respondent knew that the grease was on the deck, and there is little, if any, evidence tending to prove that the grease remained on the deck for such a period of time that in the exercise of ordinary care respondent should have discovered it."

What we have already said is sufficient to show a difference in the facts before the Court there and the facts here. Here the evidence shows a duty resting on appellant's employees to inspect the car and if grease was found on the grabiron to remove it. The car was delivered to the switching crew without the presence of any reasonably conceivable method by which grease could have gotten on the grabiron after its inspection,—a condition which was recognized to be present in the Jones case.

The Pool case supra was a suit by an engineer who sustained injuries when he stepped on grease on the end of a tie and was injured in the railroad yards. The Court cited both the Jones case and the Hopson case, applied the tests of those cases to the evidence before it and reversed and remanded the cause.

■ It is our opinion that because the facts before the courts in the above causes were so distinctly different from the facts here the court's conclusions on the facts there are not applicable here. It is further our opinion that the law as there announced supports our conclusion that the evidence was sufficient to present issues of fact to show that appellee was injured without fault on his part and that appellant's points 1 to 10 both inclusive must be overruled. San Antonio & A. P. Ry. Co. v. Brooking, Tex.Civ.App., 51 S.W. 537, er. ref.

Appellant requested the trial court to submit to the jury special issues inquiring: A. If appellee was negligent on the occasion in question? B. If such negligence, if any, was a proximate cause of the accident? and C. What percentage of the negligence proximately causing the accident was attributable to appellee? The jury was told to answer issues B and C only in the event issue A was affirmatively answered.

Issue 16 as submitted by the trial court was identical with requested issue C. As noted supra issue 16 was not answered.

While appellee was testifying he was asked questions as to the manner of his

taking hold of the grabiron from which he slipped. By answer to issue 13 supra the jury found he did not fail to grasp the upper grabiron securely with his right hand before releasing the lower grabiron. The accident occurred at night, appellant was on the ground and while the car was moving he took hold of a grabiron, put his foot in the stirrup and then, in order to enable him to ride the car, he took hold of the grabiron above his head—this being the grabiron with grease on it. This evidence conclusively shows the latter grabiron was well above appellee's head while he was on the ground. Yet appellant in its brief says:

"* * * the jury might well have considered that Hayes' failure to look or feel for grease before releasing his hold on the lower grabiron was negligence or that he should not have released his hold on the lower grabiron (where there was no grease) at all under the circumstances."

This statement is made even though the evidence shows that appellee was under no duty to inspect the cars or grabirons and that the conduct of appellant's business in its yards did not afford time for such inspection. Appellant does not direct our attention to any evidence showing or tending to show that appellee was negligent in failing to look or feel for grease or retain his hold on the lower grabiron.

■ Appellant plead contributory negligence generally, to which plea appellee did not except. Under this state of the record appellant was entitled to a submission "of all issues of contributory negligence raised by the evidence." Coleman v. Texas & Pac. Ry. Co., Tex.Civ.App., 241 S.W.2d 308, 310, er. ref. In that case the Court said:

" 'It is settled that a general plea of contributory negligence not excepted to is sufficient to warrant submission of the issue either generally or in such respective groups of issues as may be made by the evidence, if submission is requested. Owl Taxi Service v.

Saludis, Tex.Civ.App., 122 S.W.2d 225 and cases there cited; Northcutt v. Magnolia Petroleum Co., Tex.Civ.App., 90 S.W.2d 632, writ refused.' Schumacher Co. v. Shooter, 1939, 132 Tex. 560, 124 S.W.2d 857, 859."

In Agnew v. Coleman County Electric Cooperative, 272 S.W.2d 877, the Supreme Court noted its approval of the holding in Coleman v. Texas & Pac. Ry. Co. supra and quoted the above quotation from that opinion. The Supreme Court there affirmed a judgment of the Court of Civil Appeals, 265 S.W.2d 911, reversing and remanding a cause wherein the trial court had submitted the issue of contributory negligence generally but refused to submit an issue, raised by the evidence, as to a specific act of negligence. The Court there holds that the general submission of the issue does not preclude a party's right to a submission of specific acts of negligence if raised by the evidence.

■ Here if contributory negligence had been generally submitted the only evidence raising any issue of negligence on the part of appellee was that relative to his grasping the upper grabiron securely before releasing the lower grabiron. Issue 13 supra submitted this issue without objection. This is not a case where the general issue was submitted and a request for the submission of issue 13 (a specific act of negligence raised by the evidence) was denied. The only evidence from which the jury could have answered a general issue favorably to appellant was that relative to the acts inquired about in issue 13. Then viewing the conditions as they existed at the time of the submission and prior to the jury's answers, a submission of issue 13 and the submission of the general issue would have been a double submission of appellant's issue. The sufficiency of the evidence as to issue 13 is not before us, however in reference to appellant's statement supra we observe that there is no evidence of any rule of appellant prescribing any method to be used in mounting moving cars, riding them or grasping grabirons. We therefore

conclude that the complained of error did not affect the substantial rights of appellant and that, in any event, it was harmless and does not call for a reversal. Rule 434, Texas Rules of Civil Procedure.

What we have already said disposes of appellant's point 12 and also point 13(a) and they are overruled.

■ We have already set out the evidence as to the extent of appellee's injuries and his ability to perform his duties since returning to work. It may be here said that there are some conflicts in the testimony of the doctor who first treated appellee and performed the operation on his ankle and the doctor who subsequently treated him. Such conflicts in the testimony were for the jury, not us, to resolve. The evidence shows that at the time of the trial appellee's earnings in his employment were an average in excess of what he earned prior to his injuries. This was explained by the fact that there had been an over-all increase in employees' wages.

■■ The trial court gave to the jury a guide by which appellee could be compensated for mental anguish, past and future, physical pain, loss of earnings and the present reasonable cash value of such loss of his diminished earning capacity. There was evidence before the jury relative to each of the items set out in the guide and we find nothing in the record to suggest the jury did not honestly, fairly and impartially weigh the evidence and reach a verdict uninfluenced by prejudice or any improper motive. For which reason we cannot say the judgment was excessive. Missouri Pac. Ry. Co. v. Lehmberg, 75 Tex. 61, 12 S.W. 838; Industrial Fabricating Co. v. Christopher, Tex.Civ.App., 220 S.W.2d 281, er. ref., n. r. e.

■ Appellant has not briefed its point relative to the jury's answer to issue 18 being against the great weight and preponderance of the evidence. For this reason and because the answer is supported by competent evidence of probative value with little dispute in the record the point is overruled.

The judgment of the trial court is affirmed.

Affirmed.

HUGHES, Justice (concurring).

Irrespective of whether there is any evidence of contributory negligence (acts or omissions) on the part of appellee other than that inquired about in special issue No. 13, I am of the opinion that appellant has waived its right to have a jury finding thereon because of its failure to request additional controlling issues under Rule 279, T.R.C.P. That rule provides that when the court submits a case upon special issues, as here, he shall submit the controlling issues made by the pleadings and evidence and that failure to submit an issue shall not be deemed ground for reversal unless its submission, in substantially correct wording, has been requested in writing by the complaining party.

Appellant here made no request for the submission of any special or controlling issue made by the pleadings and evidence. It requested submission of an issue inquiring if appellee "was negligent" on the occasion in question. This is not a "controlling issue." Roosth & Genecov Production Co. v. White, 152 Tex. 619, 262 S.W.2d 99, and authorities therein cited. The requested issue was, therefore, not in "substantially correct wording" within the meaning of Rule 279.