**W. SILVER, Appellant,**

v.

**Alejandro NAVARETTE, Appellee.**

**No. 5477.**

Court of Civil Appeals of Texas.

El Paso.

Oct. 25, 1961.

Rehearing Denied Nov. 22, 1961.

Edwards, Belk, Hunter & Kerr, El Paso, for appellant.

Guinn, Guinn & Truex, Joe Morgan, El Paso, for appellee.

CLAYTON, Justice.

This is a personal injury suit in which the appellee recovered a judgment against the appellant for injuries received by the former through what he alleged was negligence on the part of the latter's employee.

Appellant was engaged in the business of buying and selling scrap metal, and maintained a yard in El Paso, Texas in which the metal purchased was stacked up and stored. He employed a crane operator by the name of Reyner Leyva. This employee operated a traveling crane with about a fifty-foot boom, from the end of which an electro-magnet was suspended by means of a steel cable. This piece of machinery, operating on the principle of magnetic attraction, was used to unload metal from flat cars, trucks and other vehicles, and to stack up the metal in piles, and to move the metal from one pile to another as desired. On or about November 4, 1959, appellee had gone to the yard of appellant in a pickup truck driven by one Leovardo Macias, a relative by marriage, to sell a small load of scrap metal to appellant. Appellee claims that while in the yard, the

employee Leyva swung the electro-magnet over the pickup truck next to which appellee was standing, and that a piece of metal became dislodged from the magnet and struck the appellee in the face and head.

The case was submitted to the jury on special issues, in response to which the jury found appellant's employee guilty of negligence in failing to keep a proper lookout, found this to be a proximate cause of appellee's injuries, found that appellee had not failed to keep a proper lookout, and awarded damages to appellee. After the verdict was returned, appellant filed an original and supplemented motion for judgment non obstante veredicto, which were overruled, and judgment was rendered on appellee's motion for judgment on the verdict. Appellant's original and amended motions for new trial were also overruled, and he then perfected his appeal.

The first point upon which this appeal is predicated is that the trial court erred in overruling the motion for judgment non obstante veredicto for two reasons: First, that appellant owed no duty to keep a lookout for the safety of appellee because the crane was being "openly and obviously" operated when appellee approached it, and that appellee was aware of such operation and had come to learn, from prior visits to the scrap metal yard, that pieces of metal had become dislodged and fallen from the magnet on other occasions, and that danger of injury existed to anyone beneath the magnet when it was operating.

The second reason urged under appellant's first point as to why the trial court erred in overruling the motion for judgment non obstante veredicto is that the appellee was guilty of negligence which proximately caused and contributed to his injuries.

The first reason advanced under Point One requires an examination of the testimony. Appellee testified that on the date his injuries were received, he had gone to appellant's place of business with a load of "junk" or scrap iron, in the pickup truck

being driven by Macias; that the load was weighed in by the front office personnel, and that a lady in charge of the weighing-in told him where to unload the truck. The unloading place was apparently down a narrow lane between two piles of junk, and Macias backed into this lane in order to avoid having to try to turn around. Appellee stated that he dismounted from the truck and was directing the backing up from the right hand side of the truck. He stated that when they first entered the lane, the magnetic crane was operating in a different area to the left of the truck, but as he and the truck were moving into the lane, the boom swung to the right, and directly overhead; that he saw some pipe falling at intervals and he crouched against the truck, and the next moment he was struck and knocked unconscious.

The above testimony of appellee was in all essentials corroborated by the testimony of Leovardo Macias, the driver of the pickup truck. Both of these witnesses stated that in addition to the crane operator who was operating in the yard, there was another man present at the time appellee was injured. This man was identified as one Ramon Quintana, a self-employed truck driver, who hauled materials for appellant. His truck was a two-ton G.M.C. Both the appellee and Macias testified that when appellee was struck, Quintana was with his truck, which was *unloaded* and parked *outside* the yard. Macias stated that when appellee was knocked unconscious, and Macias found he could not pick up appellee by himself, he called to Quintana, who came over and put some tape on appellee's head and assisted in getting appellee to the office.

On the other hand, Quintana testified that he was *in* appellant's yard with his G.M.C. truck, which was *fully loaded* with scrap iron, and the crane was immediately in front of his truck. He further testified that while he was working in the yard he saw appellee between the G.M.C. truck and a pile of junk. He stated that when he next saw appellee, the latter threw his hand

up to hold the spot where he had been hit; that appellee was bleeding; that he did not see appellee fall; that he asked appellee what had happened and was told by appellee that a piece of iron had hit him; and that Quintana applied a piece of tape to the wound to stop the bleeding. Quintana testified that during this time the pickup truck and its driver were outside of the yard in the street.

Reyner Leyva, appellant's crane operator, testified that on the morning that appellee received his injury, the crane was being operated to unload a two-ton G.M.C. truck in which a man was sitting (whom he later learned to be Quintana); that the G.M.C. truck was *in* the yard while the pickup was *outside* on the other side of a street, waiting to be unloaded; that the first time he noticed appellee was when he saw appellee standing by the edge of the street, holding his forehead; that Quintana got out of his truck and gave appellee a tape to put on his forehead; that appellee then walked up to his truck and got in it and was not seen again by the crane operator.

From the foregoing it may be observed that there is considerable conflict in the testimony. However, the record does not reveal any attempt to contradict the testimony of appellee and his driver that they were *directed* to the unloading place by an employee of appellant in the front office. If this be so, and if appellee was following instructions of appellant's employee in attempting to reach this unloading place at the time of his injury, we consider him to have been an invitee on the premises, and that the doctrine of Jameyson v. Farmers Gin Co-Operative Association, Tex.Civ.App., 278 S.W.2d 169, cited by appellant in his brief, does not apply here.

True, the testimony of the witnesses Quintana and Leyva would indicate that appellee was not in the process of unloading the pickup truck when he was injured, and therefore was not following instructions regarding unloading at the time of such injury. No issue which would have resolved the conflict in testimony in this respect was submitted to the jury, nor was one requested. But appellant urges in his brief that the situation presented by the testimony placed appellee in the category of a bare licensee, and that there is no difference between a trespasser and a bare licensee, citing Texas Pacific Coal & Oil Company v. Bridges et al., Tex.Civ.App., 110 S.W.2d 1248, 1251. This case employs the following language:

"* * * Circumstances may give rise to a duty due by the owner or occupant of premises to a trespasser or licensee. Sometimes such a duty may be due to a licensee and not to a trespasser. Such duties are not included in, but are additional to, the duty not willfully to injure a trespasser or licensee. When such a duty thus arises and exists, it is an affirmative duty. The necessary predicate to liability based upon a failure to perform such duty would involve acts done and not acts left undone. The negligence predicated upon the failure to discharge such a duty would be active negligence."

The Bridges case then quotes from Galveston, H. & S. A. Ry. Co. v. Matzdorf, Tex.Civ.App., 112 S.W. 1036, as follows:

"Persons who go to such places upon occasions like that which took plaintiff to defendant's waiting room are not there unlawfully or wrongfully, and their rights as licensees to complain of active negligence by which they are injured is unquestioned."

The Bridges case cites the case of Kruse v. Houston & T. C. Ry. Co., Tex.Civ.App., 253 S.W. 623, 625, in support of its analysis of the duties owed by landowners to invitees, licensees and trespassers on their property. The language of the Kruse case is enlightening and is briefly quoted:

"* * * In determining this question the general test is whether the in-

jured person, at the time of the injury, had present business relations with the owner of the premises which would render his presence of mutual aid to both, or whether his presence on the premises was for his own convenience, or on business with others than the owner of the premises. In the absence of some relation which inures to the mutual benefit of the two, or to that of the owner, no invitation can be implied, and the injured person must be regarded as a mere licensee."

Pursuing this line of thought, the Bridges case then gives this illustration:

"To give an example of the practical application of the distinction thus so clearly pointed out, let us suppose that in Kruse v. H[ouston] & T. C. Ry. Co., supra, plaintiff, instead of predicating his claim of negligence upon a failure of duty as to the unsafe condition of the platform, had sought to charge the defendant with negligence based upon striking him by swinging a crane across the platform where the fact of his license and the probability of his presence thereon by reason of such license gave rise to a duty to anticipate his presence. Of course, a very different question of liability would in such case be presented."

In the instant case, the jury found that at the time, and on the occasion in question, the operator of appellant's magnetic crane failed to keep a proper lookout and that such failure was a proximate cause of appellee's injuries. We feel that in view of these findings and the record as a whole, the appellant's employee was guilty of "active negligence" of which the Bridges case speaks, whether the appellee was an invitee or a licensee.

But the appellant further urges that he owed no duty to appellee to keep a lookout for the safety of appellee because the evidence shows that appellant's electromagnetic crane was being "openly and ob-viously" operated at the time of appellee's approach, and that appellee was fully aware of this fact and the further fact that pieces of iron had from time to time fallen from the magnetic load when in motion, and his placing his body under the crane might result in injuries to himself from falling metal.

The testimony reflects that appellee had previously seen the magnetic crane in operation, and also had previously seen pieces of metal fall from the load, which, if they struck him, would hurt him. But appellee testified: " * * * when we first entered there the crane was not operating toward our side, it was operating to a different area, that is why we proceeded in."

The jury found that appellee had not failed to keep a proper lookout, from which it can be fairly inferred that any danger of injury from the crane was not open and obvious to appellee prior to the time that the boom was swung over and above him, with pieces of metal falling from the magnet. There was no requested instruction on the "open and obvious" theory, and none was submitted. Appellant's "open and obvious" contention might also have been intended to invoke the maxim of *volenti non fit injuria*, but the Texas Supreme Court has stated, in Triangle Motors of Dallas v. Richmond et al., 152 Tex. 354, 258 S.W.2d 60, 64, that:

"A plaintiff's right to recover cannot be defeated on the theory that he assumed the risk of injury under the doctrine of volenti non fit injuria unless it appears that with full knowledge of the nature and extent of the danger involved he put himself in the way of the particular risk involved as the result of an intelligent choice."

Citing Wood et al. v. Kane Boiler Works, Inc., 150 Tex. 191, 238 S.W.2d 172. See also, City of Fort Worth et al. v. Barlow et al., Tex.Civ.App., 313 S.W.2d 906 (err. ref., n. r. e.). It is considered from the record that the appellee cannot be said to have conducted himself in such a manner as to

have voluntarily subjected himself to a risk the nature of which he had full knowledge, and as the result of an intelligent choice on his part. Nor is there anything to. indicate that appellee participated in or consented to the failure of appellant's employee to keep a proper lookout. Wood v. Kane Boiler Works, Inc., supra; Hobbs et al. v. Grant, Tex.Civ.App., 314 S.W.2d 351.

The first reason advanced under appellant's Point One is overruled.

■ Nor do we find merit to appellant's second reason urged under Point One, that appellee was guilty of contributory negligence as a matter of law. We have held that the danger to appellee did not arise, and therefore was not apparent to appellee, until the magnetic crane was swung over and above him, and metal was dropping from the magnet. Upon seeing this, appellee states: "I crouched myself against the truck and then the next moment I just did not know anything about myself. I saw something fall, and that is it."

"Q. Why didn't you get out of the way of this falling pipe?

"A. I did not have an opportunity to do so. It was too near us * * *.

"Q. All right, did you do—did you attempt to get out of the way, or what did you do?

"A. The only thing I could do was to crouch myself and hug the truck, because to the right of me was a pile of junk."

Appellant contends that appellee "voluntarily went ahead into an area into which his business did not require him to go at all." But nothing is found in the record to refute appellee's testimony, and that of his driver, that they were directed to the unloading spot, near where the incident occurred, by the lady in charge of the weighing-in for appellant.

Appellant's second reason under Point One is overruled.

Appellant's second point of error relates to the Special Issue No. 3 in the trial court's charge, wherein the jury was asked to find whether the appellee failed to keep a proper lookout at the time and on the occasion in question, which issue, as has been stated, was answered favorably to the appellee. Appellant's contention is that this issue, as submitted, was too restrictive of appellant's rights in view of the fact that appellant had pleaded general contributory negligence on appellee's part, and appellee had not excepted to this pleading.

Point of error number three complains of the trial court's refusal to submit appellant's requested issues numbers one and two. Number one inquired whether appellee had failed to use ordinary care for his own safety, and number two was the related proximate cause issue.

Point of error number four complains of the court's refusal to submit appellant's requested issues numbers three and four, which asked whether appellee had been guilty of negligence, and the accompanying proximate cause issue.

Points Two, Three and Four are grouped together in appellant's brief, and since they are related, will be discussed together here.

■■ The law covering the submission of issues under a plea of general contributory negligence, not excepted to, is apparently well settled in this state. Under such a condition of pleadings, the trial court may submit the issue of contributory negligence either generally or by special issues covering each group of facts raising an issue, if submission is requested. For a complete discussion of this matter, see the Court of Civil Appeals opinion in Coleman County Electric Co-Op, Inc. v. Agnew, 265 S.W. 2d 911, and the Supreme Court holding on application for writ of error, Agnew v. Coleman County Electric Cooperative, Inc., 153 Tex. 587, 272 S.W.2d 877. From these decisions it seems plain that even though a general submission of contributory negligence is given, the defendant is not de-

prived of his right to special submission of specific acts of negligence raised by the evidence. But as to the converse of this principle the Supreme Court, in Texas & New Orleans Railroad Company v. Hayes, 156 Tex. 148, 293 S.W.2d 484, 488, has held:

"* * * But a defendant is not entitled to a general submission of contributory negligence when the only issue of contributory negligence raised by the evidence has been submitted specially, as in this case."

Therefore, our question here seems to resolve itself into a query as to whether or not the only issue of contributory negligence raised by the evidence in the instant case is that of proper lookout, as submitted. To decide this, another brief glance at the testimony is required. Appellee testified that he and his driver were on their way to a spot at which they were instructed to unload. His driver corroborates this. No one denies that appellee was directed to an unloading spot by one of appellant's employees. Appellee testified that the magnetic crane was operating in a different direction from where they were going. The driver corroborates this. No one actually refutes it. The crane operator testified that he did not see appellee until after he was injured, and that at that time appellee was not inside the yard, but on the edge of the street. The jury found that the crane operator failed to keep a proper lookout, which was the proximate cause of appellee's injuries. The only other person who testified as to the occurrence—Quintana, the operator of the G.M.C. truck—stated that he did not see appellee until after he was injured, at which time appellee was standing between a pile of junk and the G.M.C. truck, where anyone could have seen him.

■ We do not find anything in this record that could attribute to appellee any specific act of negligence except, perhaps, the matter of proper lookout, and this is-

sue was submitted to the jury and resolved favorably to appellant. We cannot say that the court erred in the issues submitted to the jury, or those refused, and we are constrained, therefore, to overrule all appellant's points of error.

The judgment of the trial court is affirmed.