## AMERICAN NAT. INS. CO. v. PARK.
### No. 7790.

Court of Civil Appeals of Texas. Austin.
Dec. 15, 1932.

Rehearing Overruled Jan. 4, 1933.

Frank S. Anderson, of Galveston, and Hart, Patterson & Hart and Hardy Hollers, all of Austin, for appellant.

Henry Brooks and Polk Shelton, both of Austin, for appellee.

BAUGH, J.

Appeal is from a judgment in favor of appellee for the principal amount of a policy, statutory penalty, and attorney's fee, on a life insurance policy for $1,500, issued by appellant to appellee's husband, Robert Fred Park, on December 18, 1928. The annual premium was paid in advance, and the insured died on September 2, 1929. Appellant de-clined payment on the ground that certain statements made by the insured in his application were false, and that he was not in good health at the time the policy was delivered; and by cross-action tendered the premium paid and sought a cancellation of the policy.

The application for the policy was made on December 10, 1928. The evidence shows that the insured could not read nor write. The agent of the appellant went to the insured's home in Austin, Tex., where he wrote in the answers to the questions on the application, and when he had completed same, appellee signed her husband's name to the application at the request of the agent, and without reading it. The answers particularly complained of as being false were to questions 5, 6, and 8, as follows:

5. "Do you use spirituous liquor, opium or any narcotic?"

To which was written by the agent the answer, "No."

6. "Are you now in good health so far as you know and believe?"

The answer written was, "Yes."

8. "From what illness or disease have you suffered during the past ten years?"

To which the agent wrote the answer, "None."

The uncontroverted evidence disclosed that in November, 1927, Dr. H. A. Scott had treated Fred Park about two weeks for a rattle snake bite, for which he had been using whisky; that he kept whisky in his home and took a drink occasionally, but did not use it to excess; that Dr. Scott again treated him at intervals from May 9, to September 3, 1928, for pellagra, at which latter date he discharged him as free from symptoms and apparently well. In 1929, Dr. C. H. Matthews treated the insured for pellagra from May 24th to August 24th, or or about which latter date he became insane from its ravages, was placed in the state hospital for the insane, where he died on September 2d.

Mrs. Park, appellee, testified that she was present in the room with her husband and the agent when the application was being filled out; that her husband told the agent of the rattle snake bite, his use of whisky, and his treatment by Dr. Scott for pellagra in 1928, and that he had been discharged as cured; that if false and improper answers appeared on the application, they were written there by the agent with knowledge of the facts as to insured's habits and health.

The jury found in response to special issues that Fred Park did tell the agent of these facts; that Mrs. Park did not know that the agent had written down untrue answers to these questions when she signed her husband's name to the application; that she

did not discover such false answers prior to the death of Park; and that he was in good health both at the time of the application and at the time the policy was delivered.

The application contained provisions that the answers to said questions were warranted to be complete, correct, and true to the best of applicant's knowledge and belief; that such answers were to be the basis for the insurance contract, and the application was to be a part thereof; and that the contract should not be binding on the company unless insured be in good health when same was delivered.

■ Appellant contends that, notwithstanding that true answers were given the agent and false ones written down by him, because the insured had the means of discovering such fraud or neglect of the agent in writing them down, they being material to the risk, the company can avoid the policy because of the failure of the applicant to discover the misconduct of the agent, citing particularly Texas State Mut. Fire Ins. Co. v. Richbourg (Tex. Com. App.) 257 S. W. 1089, and Sovereign Camp W. O. W. v. Lillard (Tex. Civ. App.) 174 S. W. 619. These cases, however, do not apply here. The rule in this state in such cases is well stated in appellee's counterproposition, as follows: "Where the insured in good faith makes truthful answers to the questions contained in the application, but his answers owing to the fraud, mistake or negligence of the agent in filling out the application are incorrectly transcribed, the company is estopped to assert their falsity as a defense to the policy, for the solicitor of the insurance is the agent of the company, and all statements of assured in the absence of fraud must be deemed representations and not warranties."

This rule is sustained by numerous authorities beginning with Equitable Life Ins. Co. v. Hazlewood, 75 Tex. 338, 12 S. W. 621, 7 L. R. A. 217, 16 Am. St. Rep. 893; see, also, Supreme Lodge v. Jones (Tex. Civ. App.) 143 S. W. 247, 249; Schumann v. Brownwood Mutual Life Ins. Ass'n (Tex. Com. App.) 286 S. W. 200; American Nat. Ins. Co. v. Bailey (Tex. Civ. App.) 3 S.W.(2d) 539; Inter-Ocean Casualty Co. v. Brown (Tex. Civ. App.) 31 S.W.(2d) 333; 14 R. C. L. 1174.

■ Appellant also contends that the evidence showed conclusively that insured was not in good health at the time the policy was delivered; that it therefore never became effective as a binding obligation on the company; and that the trial court should have instructed a verdict for the appellant.

It is not controverted that the condition of Park's health was the same at the time the policy was delivered as it was when the application was executed. The issue as to his health on the date of delivery of the policy was one of fact for the jury, and they found that it was good. In support of that finding the following evidence appears: Testimony of Mrs. Park that he was physically well, weighed 187 pounds, was eating and sleeping well, and doing his usual and customary labors, sawing stove wood and cutting and hauling posts for a living; that he had been treated for pellagra by Dr. Scott, but had been pronounced well by him. The testimony of Dr. Scott on cross-examination that he had in September, 1928, discharged Park, after treatments, as apparently well. There was also in evidence the company's instructions to agents enjoining upon them the duty of making inquiries as to the moral and financial risk involved, family history as to certain diseases, if applicant's weight be abnormal, and that the policy be not delivered if there be apparent change in the health of the applicant since application was made. The policy in question was issued without a medical examination of Park, which necessitated a more thorough investigation in this regard by the agent on behalf of the company than would have been required had he submitted to a medical examination at the time. At the time of forwarding the application the agent in his report stated to the company that he had personally known the applicant for five months, and that he unreservedly recommended him as a fit and desirable risk. Appellant's assistant superintendent at Austin also reported in writing on December 11, 1928, that he had personally interviewed the applicant; that he knew of no facts that would affect the risk either physically, morally, or otherwise; that he recommended the applicant and assumed the responsibility for the delivery of the policy.

Three physicians testified, Dr. Scott, who treated Park for pellagra in the summer of 1928; Dr. Matthews, who treated him for the same disease in the summer of 1929; and the medical examiner of appellant, who had never seen the applicant. All of these testified that, because Park had pellagra from May to September, 1928, and again in the summer of 1929, he must have had it in December, 1928, and was not therefore in good health at that time. The jury had the right to discard the testimony of appellant's medical examiner as an interested witness. Dr. Matthews, who heard the testimony of Dr. Scott, merely stated that he agreed with his testimony. While Dr. Scott did testify that pellagra was a chronic disease, which has a tendency to recur at different seasons of the year, he also testified that doctors differed as to the cause of it; that he did not know if anybody was ever cured of it, and stated, "I don't think you can ever cure them entirely of pellagra."

We think the foregoing raised a jury issue as to the good health of Park at the time the policy was delivered, and the jury having resolved it in favor of appellee, we are not at liberty to disturb their finding. The evidence

as to his good health, both direct and circumstantial, was competent. While the opinion of experts in medical science may be strongly persuasive, where it is shown that they as a class are not in agreement among themselves as to causes of disease, method of treatment, and whether same is curable, such testimony is not conclusive upon courts or juries. What this court said in National Life & Acc. Co. v. Muckelroy, 40 S.W.(2d) 1115, on this issue is applicable here, and we merely refer to it and to the cases there cited, without prolonging this opinion by a repetition of it here.

■■ In any event, however, had Park not been in good health when the policy was delivered, we have reached the conclusion that under the authorities appellant must be held to have waived that provision of the policy. In issuing such policies without medical examination of the applicant, the company necessarily delegated to its agent the duty and authority to acquire information as to the applicant's condition and health. In directing such agent not to deliver the policy, if there had been any change in applicant's health, it necessarily imposed upon the agent a determination of that fact, which is binding upon the company. Facts ascertained by the agent within the scope of his authority are therefore imputable to the company whether transmitted to it by the agent or not; and his acts within the scope of the authority vested in him by the company become the acts of the company. Delivery of such policy to Park with full knowledge of his condition consequently amounted to a waiver of that provision of the policy. A full discussion of this particular issue, together with citation of numerous cases, to which we refer, is found in American Nat. Ins. Co. v. Bailey (Tex. Civ. App.) 3 S.W.(2d) 539, and Lee v. Mut. Protective Ass'n (Tex. Civ. App.) 47 S.W.(2d) 402. Further discussion of it here we think would merely be supererogatory.

■■ The next question presented is that of the statutory penalty and reasonable attorney's fee authorized under article 4736, R. S. 1925. This provision of the statute has been repeatedly declared to be highly penal, and strict compliance with its provisions is a necessary prerequisite to recovery of the penalties therein provided. We find no competent evidence of a "demand" for payment within the purview of the statute. Plaintiff, appellee here, filed copies of her original and amended petitions, wherein demand for payment was alleged. These pleadings were not verified and constituted no proof of the facts alleged. Nor does the filing of a suit without such demand constitute a demand as contemplated in the statute. National Casualty Co. v. Mahoney (Tex. Civ. App.) 296 S. W. 335; First Tex. Prudential Ins. Co. v. Long (Tex. Com. App.) 46 S.W.(2d) 297. Appellee relies, however, on an instrument in evidence designated as "Claimant's Certificate," sent by the company to Mrs. Park, to be filled out by her, giving the amount of the policy, claimant's name, relationship to deceased, whether she was beneficiary, legally entitled to receive the insurance, etc., and also information as to birth, residence, and occupation of the deceased, length and duration of illness, cause of death, names of attending physicians and other matters not pertinent here. This, however, shows upon its face to be merely No. 2 of the four blanks for proof of death. No. 1 was to be filled out by the attending physician; No. 2 by the claimant; No. 3 by the undertaker; and No. 4 by a friend. On the top of this claimant's certificate, which was printed on the reverse side of "Proof No. 1," was printed "Proof No. 2" and the following: "Notice—The furnishing by this company of these blank proofs of death shall not be construed that there is any insurance in force upon the life, etc.," of the deceased. And immediately over the signature of Mrs. Park was also printed, "I refer you to each of the attending physician's certificate furnished by me herewith which I have read, and ask that it be received as a part of the proof of death." Following this was "Proof No. 3" and "Proof No. 4," and applicable to all were printed instructions as to their execution designating all of them as "Proof of Death." It conclusively appears, we think, that this instrument was but a part of the proofs of death and must be treated as such. So considered it did not constitute a demand within the terms of the statute. Neither filing of a suit, nor proofs of death, absent other demands, meet the requirements of the statute. Mutual Life Ins. Co. v. Ford, 103 Tex. 522, 131 S. W. 406; National Casualty Co. v. Mahoney, supra; Commonwealth Casualty Co. v. Thompson (Tex. Civ. App.) 38 S.W.(2d) 351.

■ It follows, therefore, that the court erred in rendering judgment for the penalty and attorney's fee; that part of the trial court's judgment on said policy in favor of appellee for $1,500, with interest thereon from October 2, 1929, is affirmed; that portion awarding the 12 per cent. penalty and $700 attorney's fee is reversed, and the cause remanded for another trial upon that issue.

Affirmed in part and in part reversed and remanded.