**M. A. BOUKNIGHT, Appellant,**

v.

**C. H. LANGDEAU, Receiver, Appellee.**

**No. 10714.**

Court of Civil Appeals of Texas.

Austin.

Dec. 16, 1959.

On Motions for Rehearing Feb. 24, 1960.

Second Motion for Rehearing Denied March 16, 1960.

Schulman & Shropshire, Houston, for appellant.

Cecil C. Rotsch, A. M. LeCroix, Norman V. Suarez, Austin, for appellee.

HUGHES, Justice.

This suit was brought by the Receiver of U. S. Trust and Guaranty Company, presently appellee C. H. Langdeau, against M. A. Bouknight, doing business as M. A. Bouknight Insurance Agency. The purpose of the suit was to recover judgment for $1,744.35 for premiums on insurance policies written by appellant under his agency contract with the company and to recover the sum of $1,963.34 unearned commissions on insurance sold by appellant, such commissions having been deducted by appellant from the amount of the premium collected and such sum having become unearned by reason of the cancellation of the insurance.

The form of the action was in the nature of a sworn account. Appellant answered by denying, under oath, correctness of the account and specially pleading that appellee had failed to allow him all just and lawful offsets and credits.

In a nonjury trial appellee recovered judgment for the amounts sued for and an additional $1,200 as attorney's fees.

Appellant has thirty four assignments of error the first ten of which are grouped for briefing. We will state their substance.

Appellant objected to the introduction in evidence by appellee of the following exhibits: (1) appellee's original petition, (2) appellee's first amended original petition (trial petition), (6) copy of agency agreement between appellant and company, (7) audit of appellant's account with company, prepared by or under direction of appellee after commencement of delinquency proceedings, (11) accounts current purportedly made by appellant to company for months of September, October and November, 1955, (12) composite exhibit consisting of policies purportedly issued by appellant. These are called "daily reports."

As we understand appellant's objection to introduction of appellee's petitions it is that attached thereto was the sworn account upon which the suit was based and that this account having been properly denied under oath it, the sworn account, had no probative force.

Conceding that the sworn account lost its probative value under the circumstances stated it was nevertheless proper to offer the superseded petition in evidence for the purpose of showing that this suit was originally "founded upon a sworn account" in order to recover reasonable attorney's fees under Art. 2226, Vernon's Ann.Civ.St. The current pleading could, of course, be looked to for this purpose without it being in evidence.

We can perceive no harmful error in this trial before the court caused by the mere admission in evidence of these pleadings.

Exhibits 6, 7, 11 and 12, described above, were all properly authenticated under the provisions of Section 11 of Art. 21.28 of the Texas Insurance Code, V.A.T.S., which reads:

"(a) Records Admitted. All books, records, documents and papers of any delinquent insurer received by the liquidator and held by him in the course of the delinquency proceedings, or certified copies thereof, under the hand and official seal of the Board and/or liquidator, shall be received in evidence in all cases without proof of the correctness of the same and without other proof, except the certificate of the Board and/or liquidator that the same was received from the custody of the delinquent insurer or found among its effects.

"(b) Certificates. The liquidator shall have the authority to certify to the correctness of any paper, document or record of his office, including those described in (a) of this section, and to make certificates under seal of the Board and certified by the liquidator certifying to any fact contained in the papers, documents or records of the Liquidation Division; and the same shall be received in evidence in all cases in which the originals would be evidence.

"(c) Prima-facie Evidence. Such original books, records, documents and papers, or certified copies thereof, or any part thereof, when received in evidence shall be prima-facie evidence of the facts disclosed thereby."

■ The objection to Exhibit (6) (Agency Contract) was that it was hearsay and that the signatures of the parties thereto had not been authenticated.

The very purpose of the statute was to obviate such objections and they were not well taken.

Appellant's objections to Exhibit (7) (Audit compiled by appellee) were that his sworn denial of the sworn account made this audit inadmissible and that it was irrelevant and hearsay.

In our opinion this audit was admissible independently of Sec. 11, Art. 21.28, supra, and we do not determine its admissibility thereunder.

Mr. Francis H. Cunningham, Chief of the Agency Accounting Section of the Liquidator's and Receiver's Office of U. S. Trust and Guaranty Company, testified for appellee and we quote from the record:

"Q. Mr. Cunningham, how long have you been the chief of that section? A. Just shortly under a year, sir.

"Q. Would you tell the Court just exactly your duties as chief of that section?

"Mr. Schulman: Excuse me, if Your Honor please. If Mr. Cunningham's duty is to supervise and make the accounts and the like I would stipulate he is in such position and is competent and qualified.

"The Court: All right.

"Mr. LeCroix: Mr. Cunningham, prior to the time you became chief of that division, what were your duties?

"Mr. Schulman: Excuse me, Your Honor. Again, in the interest of time, I have submitted he is competent and qualified.

"The Court: All right.

"Mr. LeCroix: Mr. Schulman, are you stipulating as to his competency as an accountant?

"Mr. Schulman: Yes.

"Q. (Mr. LeCroix) Mr. Cunningham, are you familiar with the M. A. Bouknight Agency account with U. S. Trust & Guaranty Company in Receivership? A. Yes, sir.

"Q. Have you had occasion to work on that account? A. Yes, sir.

"Q. Have you ever prepared an audit of that account from the books and records of that receivership? A. Yes, sir.

"Q. I hand you Plaintiff's Exhibit No. 2[1] and ask you to examine the account attached thereto, being Exhibit B. Is that a reproduction or copy of the audit which was prepared by you? . A. Yes, sir.

"Q. When was that audit first prepared, do you recall? A. It would be approximately November or December of 1956.

"Q. Mr. Cunningham, generally speaking, have you had an occasion to recheck that audit since its preparation? A. Yes, sir.

"Q. Can you testify whether or not that is a true and correct statement or audit as reflected by the records in the possession of the Receiver?

\*    \*    \*    \*    \*    \*
"Q. You may answer the question. A. Yes sir.

"Q. It is a true and correct statement? A. Yes, sir."

The books and records referred to by this witness were before the Court below and are before this Court. Concerning this audit and these records, Mr. Cunningham's testimony covered seventeen pages on direct examination and fifty six pages on cross examination.

■ As a qualified witness Mr. Cunningham was entitled to testify to the conclusions reflected by his audit from an examination of the books and records of the company. 32 C.J.S. Evidence § 526, p. 226.

■ Exhibit (11) consisted of accounts current for the months of September through November, 1955. They were offered in evidence "for the purpose of showing that these accounts current were submitted by the defendant to the general agent of the company for the business of those months." The objection to this offer was that "there being no predicate laid or any relevancy shown." This objection was overruled and the accounts admitted in evidence.

These accounts were admissible because they were authenticated as required by Sec. 11, Art. 21.28, supra.

They were also admissible because they were identified by appellant as having been prepared by his office and as having been transmitted by his office to the U. S. Guaranty and Trust Company.

■ Exhibit (12), consisting of copies of insurance policies, the evidence showing that when an agent writes a policy the original is delivered to the insured, a copy retained and a copy forwarded to the insurance company.

These copies, they were actually only skeleton copies, were duly authenticated under Sec. 11, Art. 21.28, and were admissible in evidence over appellant's objections that the original policies were the best evidence of such matters. Even without this statute the best evidence rule would not apply as the policies of insurance were only collaterally involved in this suit. The contents or terms of the policies were not in issue. Section 1567, Vol. 2, McCormick and Ray, Texas Law of Evidence, Second Edition.

■ Appellant argues that Sec. 11, of Art. 21.28 is in conflict with Rule 185, Texas Rules of Civil Procedure and Art. 3737e, V.A.C.S.

Rule 185 relates to suits on sworn accounts and provides, generally, that the account sued on shall be taken as prima facie

---

1. This Exhibit appears in the record and appellant refers to it as Exhibit (7).

evidence of the account unless denied under oath.

Art. 3737e is the statute making business records admissible under stated conditions.

Appellant also says that this Section 11 is unconstitutional as class legislation although he has no point or assignment to this effect.

We see no connection between this statute (Sec. 11) and Rule 185.

We see no conflict between Sec. 11 and Art. 3737e but if so Section 11 having been enacted after Article 3737e would prevail. In our opinion these statutes complement each other.

Appellant does not cite any constitutional provision which Section 11 allegedly violates and does not otherwise brief this contention.

As this question is presented we do not consider it our duty to adjudicate the validity of this statute, but rather we should presume its constitutionality. Vol. 9, Tex. Jur., Section 58, Constitutional Law.

Appellant's other points grouped with those specifically discussed are predicated on the assumption that such points would be sustained and their separate treatment is not required.

Points 1 through 10 are overruled.

Appellant next groups for briefing points 11 through 16. We copy appellant's statement of the content of these points:

"Defendant-Appellant says that Plaintiff-Appellee has failed to prove his case on sworn account as required by law. Defendant-Appellant takes the position that the documents admitted into evidence were improperly admitted and do not support the judgment. Further Defendant-Appellant takes the position that the testimony of the auditor did not connect up the exhibits admitted into evidence with the matters contained in the sworn account and that Plaintiff-Appellee has failed to prove his account item by item as required by law. Defendant-Appellant further takes the position that in the proof of his account it was necessary for Plaintiff-Appellee to prove up the reasonable cost of the premiums charged and that Plaintiff-Appellee's proof is completely devoid of such testimony and that Plaintiff-Appellee has failed to prove a material and necessary part of his account and that failing such proof he cannot sustain recovery."

Insofar as these points relate to the admission of the evidence discussed above they are repetitious and will not be further noticed.

■ We overrule appellant's points to the effect that it was incumbent on appellee to prove that the insurance premium charges were reasonable. Premium rates are fixed by the Board of Insurance Commissioners and it is illegal not to observe these rates. Appellant sold the insurance at the rates shown by the evidence upon which the judgment herein is based. In the absence of pleading or proof we will not presume that the company charged or that appellant sold insurance at rates other than legal rates.

■ We also overrule the contention that the indebtedness of appellant to the company was not adequately proved.[2] This account was established from the books and records of the company and was wholly based upon the contract executed by appellant and the reports which he sent to the company. Appellee had no other source of information. It is quite true that the auditor, Mr. Cunningham, did not testify to each item of the account. The date upon which each item was based was in the rec-

2. This statement is subject to our holding restricting appellant's liability under the facts established.

ord and Mr. Cunningham testified that each item of the account was verified by the record.

We note that appellant's lengthy cross examination of Mr. Cunningham was principally based on these records and that no contention is made by appellant that all items of the account are or, for that matter any of the items of the account is, erroneous or incorrect.

Points 11 through 16 are overruled.

Appellant next groups for briefing points 17 through 26. These points all question the allowance of $1,200 attorney's fees.

Appellant contends that presentment of the account was not made as required by Art. 2226, V.A.C.S. This article authorizes the recovery of reasonable attorney's fees if a sworn account is not paid within thirty days after it has been presented to the debtor.

It was stipulated that demand for payment of the account sued on was made. The time of such demand was not stipulated. Appellee's complete statement on this point follows:

"Appellee points out to the Court that on page 24, Statement of Facts, it was stipulated by the attorney for the Appellant that the demand for payment was made. Further the Appellee points out that the petition of the Appellee was filed and served on Appellant in January of 1958, which petition included a copy of the audit of the account; that the case was tried on its merits in February of 1959, over one year later, and your Appellant submits that the 30-day requirement of the Statute was met, and under the holding of the Supreme Court of the State of Texas, attorney's fees in this regard should be allowed."

The Supreme Court case referred to is Gateley v. Humphrey, 151 Tex. 588, 254 S.W.2d 98, 100. There the Court held:

"Thus the language of the Article [2226] as it now exists is plain and seems clearly to authorize the recovery of attorney's fees if a claim is not paid within thirty days of presentation, and this wholly without reference to whether or when suit is filed."

In that case it appeared that demand of the sum due was made four days before suit was filed.

Appellee's contention seems to be that filing suit and timely service of process satisfies the statutory requirement that a claim be "presented for payment" for a period of thirty days before attorney's fees could be recovered. This must be his position because there is no other evidence to prove the timely making of a demand.

No authorities have been furnished by the parties to aid us in deciding this question.

We have concluded that the filing of suit and the service of process is not the equivalent of presenting a claim for payment within the meaning of Art. 2226 and that attorney's fees were improperly allowed. Our decision is based upon the authorities construing a similar statute i. e. Art. 3.62 of the Texas Insurance Code. This statute provides, in part, that if a loss occurs and the company "liable therefor shall fail to pay the same within thirty days after demand therefor" certain penalties shall accrue. There are many cases which hold that the demand required by this statute is not satisfied by filing suit among which is American National Ins. Co. v. Park, 55 S.W.2d 1088, writ ref. by this Court. A similar holding of the Eastland Court of Civil Appeals is found in Rio Grande National Life Ins. Co. v. Bailey, 153 S.W.2d 493, which cites many authorities to the same effect among which is Northwestern Life Assur. Co. v. Sturdevant, 24 Tex.Civ. App. 331, 59 S.W. 61, 62, writ denied, by the San Antonio Court of Civil Appeals from which we quote:

"We think it was the intention of the legislature to require a demand to be made after the policy became due, and before a suit, in order to satisfy the valid demand, without putting the policy holder to the necessity of suing therefor. The demand was the significant act, intended to put the company upon election whether it would pay the sum demanded, or require the policy holder to sue therefor, and subject itself to those penalties if the plaintiff recovered judgment for such sum. We do not mean to say that the demand could not be made after suit; on the contrary, we think that the demand might be made thereafter, and a cause of action for the penalties set up by an amended petition as an original suit; but, in our opinion, the suit itself would not be such demand as the statute intended."

We perceive no distinction between the "demand" for payment required in Art. 3.62 and the requirement of Art. 2226 that a claim be "presented for payment."

We are also of the opinion that the quotation from Gateley v. Humphrey, supra, clearly recognizes that filing suit and presentation of a claim for payment are not one and the same thing under Art. 2226.

This holding dispenses with the necessity of deciding other points pertaining to the allowance of attorney's fees.

■ Points 27 through 31 are grouped for briefing. By these points appellant contends that he is entitled to offset the judgment obtained by appellee in the amount of return premiums due on policies cancelled by the Court in the delinquency proceedings against U. S. Trust and Guaranty Company.

If a paid for policy of insurance is cancelled then the insurer (generally speaking) owes to the insured the return of the unearned premium. This simple situation is complicated here by the fact that the insurer (U. S. Trust & Guaranty) had not received payment for all the cancelled insurance.

The agency contract between appellant and the company provided in part:

"The agent shall keep accurate records of all policies issued for the company and shall report daily the writing of such policies to the company. The agent shall not later than the 10th of each month render a statement to the company showing in detail all policies issued during the previous month. The agent shall not later than sixty days from the close of the month in which such policies were effective pay to the company the premiums thereon, whether such premiums have been collected or not, less commission.

"It is a condition of this agreement that the agent shall refund rateably to the company on business heretofore or hereafter written commissions on cancelled liability and on reduction in premium at the same rate of which such commissions were originally retained."

It was upon this agreement and upon the above provisions particularly that appellee sued and obtained judgment against appellant for insurance sold by him the premiums for which had not been collected or if collected had not been paid to the company and for the unearned portion of commissions, resulting from policy cancellation, withheld by appellant in remitting premiums for policies written by him.

It is appellant's contention here that he is due an offset against the amount owing or withheld by him because he extended credit to persons to whom he issued policies of insurance and to the extent that these persons are entitled to a premium return he is subrogated to their rights.

It should be stated here that appellant reinsured some of his customers after cancellation of their polices in the company and

procured assignments of return premiums from them, these assignments being made after institution of delinquency proceedings.[3] If, and this is not debatable, appellant's claim is based solely on these assignments then under Article 21.28, Sec. 3 (f and g) the amount of such assigned claims could not be used to offset the debt of appellant to the company.

In addition to the theory of subrogation referred to above appellant contends that his liability to the company was not the full amount of the unremitted premiums (less earned commissions) but is and should be limited to the earned premiums (less earned commissions).

Appellant states the question to be:

"Does the Liquidator have the right to collect the entire premium for the entire portion of the year insofar as those premiums arise from business written during the months of September, October, November and December 1955 or does the Liquidator have the right to recover only the earned portion of such premiums, which is the pro rata portion of the premium for the period of coverage which was from the time the policy was written until cancelled by court order."

Appellee's view of the question is reflected by these quotations from his brief:

"When the U. S. Trust & Guaranty Company went into receivership on February 3, 1956, there was a certain status of liability existing between the company and its policyholders, and the company and Appellant, Agent. The liability of the various parties can best be brought out by the following illustration.

"If the policyholder had six months to go on his one-year policy at the time of the court cancellation, he had a claim for the other one-half unearned premium which had never been earned by the company because of the cancellation. If the company had never received the premium itself from the insurance agent, then it was necessary that this premium be collected in order to return it to the policyholder. If the company had received the premium from the insurance agent, the agent had already deducted his commission for the full year from this premium, so it was necessary for the company to collect one-half of his commission, or in other words, the 'unearned' commission, from the agent in order to make up the complete unearned premium to be returned to the policyholder in order to satisfy the policyholder in full for the amount due him for the unexpired term of his policy.

\*    \*    \*    \*    \*    \*

"This is an attempt to recover one asset of the defunct U. S. Trust & Guaranty Company, namely an amount shown owing on the company's books by the Appellant as of December 15, 1955, in the amount of $3,707.69 plus attorney's fees and court costs. It is submitted that this is a suit by the Receiver of a defunct insurance company on behalf of all of the creditors of the company. It is not a suit for the benefit of Appellant's particular policyholders.

"To give an example of Appellant's action and its effect on the other creditors of the company, take Mr. M. L. Kasner, one of the policyholders. Mr. Kasner was due $52.73 return premiums on his policy. Had Mr. Kasner put in a claim against the receivership estate, we will assume for the moment that upon distribution of assets the policyholders and creditors would have received 50%, or $26.36. Mr. Kasner, however, was not relegated to the rank

---

3. A claim based on these assignments was filed with and approved by receivership court in the sum of $7,347.80.

of a general creditor of U. S. Trust & Guaranty Company, as were the other policyholders. He was treated as a preferred creditor by the Appellant and paid one hundred cents on the dollar, or his full claim of $52.73, when Appellant reinsured him and took the assignment. Then Appellant took the assignment and by means of his offset in this lawsuit is attempting to accomplish what Mr. Kasner himself could not accomplish, that is, realize the full amount of the debt owed. Mr. Kasner was not a preferred creditor and Appellant is not a preferred creditor of U. S. Trust & Guaranty Company, but the latter seeks to put himself in this category by means of his assignment and offset."

Appellee cites four cases to support his position. We will discuss each.

Wheeler v. Metteauer, 283 S.W.2d 95, Galveston Court of Civil Appeals.

This was a venue suit and of interest here merely held that an insurance agent was under no duty to repay policyholders unearned premiums on their cancelled policies.

Eng v. Wheeler, 302 S.W.2d 363, San Antonio Court of Civil Appeals, writ dismissed, was a case by the receiver of an insurance company against an agent for the recovery of unearned commissions retained by the agent, the policies having been cancelled. The agent attempted to set off against this claim the amount of unearned premium which he had refunded his customers or the cost of reinsuring them. The Court, following Wheeler v. Metteauer, supra, held the offset unallowable.

Arnold v. Wheeler, 304 S.W.2d 368, San Antonio Court of Civil Appeals, writ ref. N.R.E., was a case in which the receiver sued an agent for premiums collected by him. The Court held the agent liable and that he could not offset the amount of these premiums which the agent had used in buying other insurance for his customers. The agreement between the agent and the company in that case provided that all monies collected by the agent for the company should be held by the agent in a fiduciary capacity until transmitted to the company.[4]

Wheeler v. Clark, 306 S.W.2d 158, San Antonio Court of Civil Appeals, writ refused, was a case in which the receiver of an insurance company sued an agent for commissions retained but unearned as a result of the cancellation of the policies and the Court disallowed an offset based on premiums returned by the agent to his customers or the cost of procuring other insurance, the Court stating that to allow the agent such offset would make him a preferred creditor of the insolvent company.

It is obvious that in none of these cases is suit brought for funds not in the hands of the agent. Nor does it appear in any of these cases that an agency contract was involved which, as here, provides that the agent shall pay to the company at the time stated premiums on insurance written by him "whether such premiums have been collected or not."

An agreement merely that an agent was liable to the company for premiums collected by him would scarcely be worth the effort required to write it down. Of the utmost importance, however, is the provision that the agent is liable for uncollected premiums.

Such an agreement was before the Court in Waters v. Wandless, 35 S.W. 184, 185, Dallas Court of Civil Appeals. This case was cited and followed in J. E. Earnest & Company v. Word, 137 Tex. 16, 152 S.W.2d 325. We quote from the Waters case [35 S.W. 185]:

4. The agreement between the agent and the company in this case contains a similar provision.

"It further appears that the insurance company looked to Waters [the agent] for the payment of the premium, and not to the assured. When Waters delivered the policy to Wandless, and failed to collect the premium thereon, his liability to the insurance company for its part of same became absolute, and his bondsmen also became liable to the insurance company therefor. Waters trusted Wandless to pay the premium, and having thereby made himself the debtor of the insurance company therefor, he became interested in the subject-matter, and, having paid the same, became thereby subrogated to all the rights of the insurance company in the premises, and entitled to sue and recover in his own name."

Under this opinion appellant, the agent, could have sued his customer for unpaid insurance premiums but what would his recovery have been? The consideration for the agreement between appellant and his customers had partially failed. It had failed to the extent of the permanently unearned portion of the premium. Appellant's recovery would certainly have been limited pro rata.

Now when appellee sues appellant upon an identical state of facts why should his recovery exceed the amount of the earned premium, less the commission?

Both the policyholder and appellant (the commission aside) have agreed to pay the full premium. If there is a partial failure of consideration as to the one it seems to us that there should be as to the other. As held in Waters, appellant became the debtor of U. S. Trust and Guaranty Company. As such debtor there was available to him all the defenses of a debtor and all the defenses which would have been available to the policyholder had he been sued.

Let us examine, for a moment, the import of this suit.

As to unpaid, unearned premiums, appellant would be required to pay for insurance not received to the company who failed to deliver it in order that this money, so collected, could be distributed as a windfall to persons (policyholders and general creditors) having no claim to it.

Appellant's remaining points, 32–34, relate to the findings of fact and conclusions of law filed or requested to be made and filed. Since there are no conflicts as to material facts we are of the opinion that a discussion of these points would be fruitless.

It is our opinion that appellee is entitled to recover from appellant (1) unearned commissions (2) the amount of earned premiums on policies written by him whether collected from the policyholder or not (3) all premiums collected by him prior to cancellation of the policy and not forwarded to the company, less earned commissions.

It is our opinion that appellee is not entitled to recover from appellant (1) unearned premiums not collected by him from the policyholder (2) attorney's fees.

Appellee concedes that in view of certain dividends which have been allowed but not paid to appellant, that these dividends should be allowed as of the date they were made and that interest should run only on the difference between these amounts and the amount appellant owes from the date of the judgment.

As we understand the record it is not in condition for us to render final judgment in that it does not disclose the amount of unearned premiums not paid by the policyholder to appellant prior to cancellation of the policy. This cause is, 'therefore, reversed and remanded.

Reversed and remanded.

On Appellee's Motion for Rehearing

Appellee complains of our ruling that no presentment was made under Art. 2226,

V.A.C.S., authorizing the allowance of attorneys' fees and he has filed a supplemental transcript containing the Officer's Return showing service on and delivery of copy of appellee's petition to appellant on January 16, 1958.

If our order reversing and remanding this case is valid then the question of timely presentment of claim under this statute will not arise upon retrial. It was stipulated that presentment or demand for payment had been made and much more than the thirty days will have transpired since such stipulation was made when this case will be retried.

Furthermore, if a judgment differing from the one previously rendered by the Trial Court is rendered on retrial, attorneys' fees will properly be appraised in view of such judgment and the work entailed in securing it.

■ Finally, however, we are of the opinion that this is not a suit on a sworn account within the meaning of Art. 2226. We quote from Meaders v. Biskamp, 316 S.W.2d 75, 78, Texas Supreme Court:

"It has been held that a sworn account is defined according to its popular sense and applies only to transactions between persons, in which there is a sale upon one side and a purchase upon the other, whereby title to personal property passes from one to the other, and the relation of debtor and creditor is thereby created by general course of dealing (which may include only one transaction between the parties). It does not mean transactions between parties resting upon special contract."

Reverting now to appellee's trial petition we find these allegations:

"That on or about the 12th day of July, 1949, the Defendant entered into a written contract with said Company, whereby the Defendant was empowered to solicit and sell policies of insurance of said Company, and which said contract provided for the payment of the premiums by the Defendant to said Company. A photostatic copy of said contract is attached hereto as Exhibit 'A' and made a part hereof the same as if copied in full herein and hereat." (Pertinent portions of this contract have previously been copied.)

Clearly, it seems to us, this is a suit "resting upon special contract" and we so hold.

Appellee also complains that in holding appellant not liable for unearned, uncollected premiums we have rewritten that portion of the agency agreement requiring appellant to pay premiums on insurance written by him whether "collected or not." Certainly this is a binding obligation just as a promissory note or other contractual promise is binding, yet if a consideration for a promise fails wholly or partially the promise or obligation is accordingly defeated. The promise to pay for insurance written by appellant does not, we believe, include a promise to pay for insurance which the company failed to deliver. Struve v. Moore, 136 S.W. 1175, Court of Civil Appeals. See also Hudson v. Compere, 94 Tex. 449, 61 S.W. 389.

■ Appellee also contends that the pleadings are insufficient to support a defense of failure of consideration.

The form of this suit was upon a contract but purporting to be in the nature of a suit on open account. Appellant denied, in his answer, that the account sued on was not "just or true in whole or in part" and that he had not been allowed "all just and lawful offsets, payments and credits against the account" upon which suit was based.

Whether these pleadings authorized a defense of failure of consideration we need not decide. In Cretien v. Kincaid, Tex.

Civ.App., 84 S.W.2d 1094, affirmed 130 Tex. 513, 111 S.W.2d 1098, Tex.Comm. of App., it was held that where a cause was pleaded and tried upon an erroneous theory and the rights and liabilities of the parties adjudicated on that basis, a reversal should be ordered.

We do point out that appellee affirmatively pleaded a cancellation of policies written by appellant and thus, generally at least, pleaded failure of consideration.

The motion is overruled.

Motion overruled.

### On Appellant's Amended Motion for Rehearing

Appellant's motion for rehearing (original and amended) contains thirty five points which are supported by a brief containing 123 pages. We will discuss and decide, as briefly and succinctly as possible, the questions presented and not heretofore discussed and decided.

In our original opinion we stated that appellant had no point or brief directed to the unconstitutionality of Sec. 11, Art. 21.28, V.A.T.S. We can no longer make this statement. Appellant points to Art. 1, Sec. 3, Art. 3, Secs. 56 and 57, Constitution of Texas, Vernon's Ann.St., and the Fourteenth Amendment to the United States Constitution as being violated in the passage and application of this statute.

Appellant's main premise is that Sec. 11 is a local or special law enacted under the guise of a general law since it "is applicable only to the receiver—liquidator of an insurance company and that as such it discriminates in favor of such individual and against all other receivers who may be lawfully appointed under the laws of the State of Texas."

We believe appellant's view of Sec. 11 is too narrow. It is only a small part of a code of law providing for the regulation of the insurance business, a business affected by the public interest. The emergency clause to the code as passed in 1951 recites that certain facts exist "making it practicable and necessary that such laws (insurance) shall be made clear, concise, adequate and consistent for the protection of the insuring public as well as for the protection of those engaged in the insurance business."

The classification to be appraised as reasonable or discriminatory is the one made by the Legislature in separately legislating for insurance companies, solvent or insolvent. We have no doubt upon this matter. The history of classifying insurance companies for special legislative treatment and the need for such classification is too long and too complex to be noted here but it is a matter of common knowledge. We find no constitutional infirmity in Sec. 11.

Appellant questions the authority of the Receivership Court to cancel outstanding insurance. We do not agree. As a general rule a receiver may adopt or breach a contract of his principal. 11-A Tex.Jur., Corporations, Sec. 629, 36 Tex. Jur., Receivers, Sec. 77. Whether the cancellation of insurance policies was a breach of the contract of insurance, we do not decide. We do hold that the receiver had authority, with the court's approval, to cancel such policies even if the contract were breached.

Since appellant was not a party to any of the insurance contracts, we decline to pass upon his contention that the order cancelling the policies was invalid because of lack of notice to the policyholders.

We also overrule appellant's contention that Sec. 3(g) of Art. 21.28 insofar as it denies the right of offset to claims purchased after commencement of delin-

quency proceedings with the view to its being used as an offset is unconstitutional because of a defective caption of the Act in which it was contained. We quote from its caption:

"An Act providing for the amendment of Article 21.28 of the Texas Insurance Code of 1951, such Act concerning the liquidation, rehabilitation, reorganization, or conservation of insurers, and placing same under the Board of Insurance Commissioners; defining certain words and phrases used in this Act; * * * fixing the rights of interested parties; * * * providing for offsets; * * *". Ch. 267, p. 737, Acts 54th Leg., Reg. Session, 1955.

It is contended that this caption is inadequate under Sec. 35, Art. 3, Texas Constitution.

It is our opinion that the provisions of Sec. 3(g), Art. 21.28 of the Insurance Code are fairly within the object expressed in the caption to the 1955 Act.

Appellant also requests that our opinion be clarified. We gladly comply.

As to any one policy the maximum liability of appellant would be the amount of premium collected and not paid over or the amount of uncollected earned premium whichever sum is greater. If part of an earned premium was paid to appellant but not forwarded to the company, appellant's liability would not be augmented thereby. To hold otherwise would allow double recovery for a single liability.

As to appellant's liability for commissions on policies written by him but unpaid, appellant poses this illustration:

" * * * if the total policy of insurance was $120.00 and Appellant owed Appellee one-fourth of that amount, he would owe exactly $30.00. On the other hand if Appellant owes one-fourth of $90.00, which is the amount of premium involved for the entire year, he would owe $22.50. If he owed the full $30.00 as return commissions less $7.50 as earned commission, he would owe to Appellee the sum of $22.50 as the return. Obviously this would mean that under one computation he would owe $45.00 and under the other computation he would owe only $22.50."

We are not sure we fully understand appellant but we agree, under his example, that the total commission is $30 and the earned commission being $7.50, appellant would owe a return commission of $22.50.

Other points presented have been disposed of in our original opinion.

The motion is overruled.

Motion overruled.