TEXAS AND NEW ORLEANS RAILROAD COMPANY V. R. E. HAYES
No. A-5623. Decided July 11, 1956.
Rehearing Overruled October 3, 1956.
(293 S.W. 2d Series 484)

*Baker, Botts, Andrews & Shepherd,* and *John F. Heard* and *Robert L. Steely,* all of Houston for petitioner.

The Court of Civil Appeals erred in affirming the error of the trial court in overruling petitioner's motion for instructed verdict because there was no evidence to raise any fact issue of negligence on the part of the railroad company and in holding that there was no evidence to support of the submission of petitioner's requested issues and in affirming the error of the trial court in refusing to submit these issues. Hopson v. Gulf Oil Corp, 150 Texas 1, 237 S.W. 2d 352; Missouri K. & T. Ry. Co. v. Jones, 103 Texas 187, 125 S.W. 309; Agnew v. Coleman County Elec. Co-op., 153 Texas 587, 272 S.W. 2d 877.

*Helm, Jones, McDermott & Fletcher, Albert P. Jones* and *Raymond L. McDermott,* all of Houston, for respondent.

MR. CHIEF JUSTICE HICKMAN delivered the opinion of the Court.

In the trial court judgment was rendered under the Federal Employers' Liability Act, 45 U.S.C.A., Sec. 51 et seq., in favor of respondent, R. E. Hayes, against petitioner, Texas & New Orleans Railroad Company, for $35,675.00 damages for personal injuries, which judgment was affirmed by the Court of Civil Appeals. 284 S.W. 2d 776.

Respondent was a member of a switching crew in petitioner's Englewood Yard in Houston. We take this description of the accident from the opinion of the Court of Civil Appeals:

"On December 13, 1952, appellee [respondent] was working from 3 o'clock p.m. to 11 o'clock p.m. and was working with a switching crew in appellant's [petitioner's] Englewood Yards. This crew had taken a string of cars from appellant's [petitioner's] receiving track in Englewood Yards and at the time of the accident the engine was moving some 4 to 6 cars at a speed of 3 or 4 miles per hour. In the performance of his duties appellee [respondent], in attempting to get on the gondola car, swung onto the steel ladder on the side of the car. (This ladder consisted of a stirrup which was above the track and some distance above the ground on which appellee [respondent] was and above the stirrup were grabirons to enable a person to climb up the side of the car.) When appellee [respondent] swung onto the car he was in a stooped position and, in order to enable him to ride it, he reached for a grabiron above his head, his hand slipped and caused him to fall to the ground and sustain the injuries complained of,—multiple fractures of the left ankle. Appellee [respondent] said that at the time he was wearing thin cotton gloves and that when his hand slipped he he felt a 'clump or lump of grease' on the grabiron."

In answer to special issues the jury found that there was grease on the grabiron, which condition could have been ascertained by proper inspection; that petitioner failed to make a proper inspection, which was the proximate cause of respondent's injuries; that petitioner permitted grease to accumulate on the grabiron and allowed it to remain there for such a period of time that in the exercise of ordinary care it should have been discovered and removed; that the greasy substance on the grabiron rendered it dangerous; and that petitioner failed to warn respondent of the condition. Each finding of negligence was followed by a finding of proximate cause. Following the

return of the verdict petitioner filed a motion for judgment *non obstante veredicto,* or notwithstanding the answers to various issues, which was overruled by the trial court, and which ruling is challenged by ten points in the application for writ of error.

■ Under the Federal Employers' Liability Act the employer is not an insurer of the safety of its employees, but its liability is for its negligence which proximately causes injuries to its employees. There is no contention that any act of negligence, except the presence of a lump of grease on the grabiron, caused respondent's injuries, and we agree with the contention of petitioner that "* * * the decisive question in this case is whether the evidence has established any negligence on the part of petitioner concerning that lump of grease." There is no evidence in the record indicating how the grease got on the grabiron, who put it there, or how long it had been there. In order, therefore, to establish negligence the burden was upon the respondent to establish that the presence of the lump of grease on the grabiron was known to petitioner before the accident or that it had been there long enough to justify the inference that its failure to know it was due to a want of proper care. Missouri, K. & T. Ry Co. v. Jones, 103 Texas 187, 125 S.W. 309; Hopson v. Gulf Oil Corp., 150 Texas 1, 237 S.W. 2d 352. Under the facts of this case, the question is narrowed to these inquiries: Was the car inspected by petitioner's inspection crew shortly before the accident, and, if so, was there any evidence warranting the inference that the grease was on the grabiron at the time of such inspection? The answer to these questions must result from a careful consideration of the evidence. It will be considered in the light most favorable to the respondent.

■ Petitioner maintains two switching yards in Houston situated about five miles apart—the Englewood Yard, where respondent was injured, and the Hardy Street Yard. When trains are inspected in the Englewood Yard the duty of the inspectors extends to an inspection of all grabirons of each car for the presence of grease. When a train to be inspected pulls into the yard a blue flag in daytime and a blue lantern at nighttime is placed on the train, and the switching crew does not take over until the flag or lantern has been removed by the inspector. The time elapsing after the inspection of the cars and before they are turned over to the switching crew varies from a few minutes to an hour. Petitioner employs guards in the yards to put out persons who are not authorized to be there. From the time of the completion of the inspection until the switching crew takes

over no one would have occasion to climb on the cars. On the day of the accident respondent came on duty at 3 o'clock and thereafter saw no one climb on the car. These facts to our minds afford some evidence from which the jury might draw the inference that, if this car was inspected in the Englewood Yard, the grease was on the grabiron when it was inspected, and that the inspector negligently failed to discover and remove the grease.

This brings us to the more difficult question of whether the car in question was inspected in the Englewood Yard. There is testimony in the record that sometimes cars are brought to the Englewood Yard from the Hardy Street Yard, and that such cars are inspected at the Hardy Street Yard and not again inspected at the Englewood Yard. There is no evidence that the cars involved here were moved from the Hardy Street Yard; neither is there positive evidence that they were not. No member of the inspection crew was called as a witness to give testimony as to whether or not he inspected this particular string of cars. The conclusion that the car was inspected in the Englewood Yard must be drawn, if at all, from parts of the testimony of various witnesses viewed in the light most favorable to respondent. Respondent testified that the switching crew is not allowed to touch a car until after the inspection is made. He further testified on cross-examination: "Q. All right. Did or do you happen to remember whether you got that cut of cars from a receiving track? A. Yes sir, from a receiving track. Q. Cars received from other railroads? A. No sir. This particular track, those particular tracks the other railroads, one of our own trains brought them in though. Q. One of your own trains brought in that particular cut of cars. You don't know how long this particular cut of cars had been setting on the receiving track? A. No sir." He further testified: "Q. As I understand what you mean . . . you don't *proporte* [purport] to know or tell us that every car handled by a switching crew has had an inspection an hour before? A. They are inspected before we get them." He further testified that every car handled by a switching crew is inspected before the crew gets on it.

Petitioner's witness Schustereit, foreman of the crew in which respondent was working at the time he was injured, testified on cross-examination: "Q. You got all the cars you were switching from track 13? A. Yes sir. Q. That is a regular receiving train track? A. Yes sir. Q. They are first inspected by the car inspectors are they not? A. Yes sir. Q. As soon as they are inspected you get them? A. Yes. Q. By that

they must have finished inspection by 8:10 or 8:00 o'clock? A. Sometime before then—they work all the other tracks all the way down—they might have set there 30 or forty minutes even." He testified further on cross-examination: "Q. You get them as soon as the blue flag is removed? A. Yes sir. Q. Did you see it removed from this particular cut of cars? A. No sir. Q. And you don't know what time the inspectors completed their inspection of this cut of cars? A. No, I don't."

Respondent's witness Jackson testified: "Q. Now Mr. Jackson, from your experience on the railroad, and your work in various safety matters with the railroad, what is the practice of the T. & N. O. Railroad with respect to making inspections of cars before they are turned over to switchmen to work with? A. The car department inspects the cars and then the switchmen are instructed by a Yardmaster to go with them to a certain track or particular track."

Petitioner's witness Holton gave the following testimony on cross-examination: "Q. When a train comes into Englewood yards, a T. & N. O. train and is put on the receiving line it is the duty of the car inspectors to inspect every car? A. Yes sir."

■ While this testimony is not conclusive of the matter, it is some evidence that the car from which respondent fell was not a part of a drag from Hardy Street Yard but a part of a train which was inspected in Englewood Yard. As observed above, the evidence clearly raised the issue that the car was in the same condition when respondent fell from it as when it was inspected. Summarizing, there is some evidence in the record that the car was inspected shortly before it was turned over to the switching crew and that the grease must have been on the grabiron at the time it was inspected. From this it follows that the jury's findings that petitioner failed to make a proper inspection of the car and that such failure was the proximate cause of respondent's injuries find some support in the evidence.

■ There remains for decision a question of practice. Petitioner pleaded contributory negligence generally, to which pleading respondent did not except. The court submitted this special issue on contributory negligence: "Special Issue No. 13. Do you find from a preponderance of the evidence that R. E. Hayes failed to grasp the upper grab iron securely with his right hand before releasing the lower grab iron? Answer 'We do' or 'We do not'." Petitioner did not except to the issue as submitted, but

requested the court to submit special issues inquiring whether respondent was negligent on the occasion in question and whether such negligence, if any, was the proximate cause of the accident. The contention of petitioner is that the jury was entitled to consider respondent's appearance as he testified and decide as to his truthfulness; that much of the evidence offered by respondent concerning the manner in which he boarded the car consisted of demonstrations which the jury saw, but which were not adequately described in the statement of facts. As we interpret this argument it is to the effect that an issue of fact was raised by evidence not in the record. If this case is to be reversed, it must be upon some error disclosed by the record. We find no evidence therein raising any issue of contributory negligence except that which was covered by special issue number thirteen in the court's charge. The pleading was sufficient to warrant the submission of the issue of contributory negligence either generally or by special issues covering each group of facts raising an issue. Agnew v. Coleman County Electric Cooperative, Inc., 153 Texas 587, 272 S.W. 2d 877; Coleman v. Texas & Pacific Ry. Co., 241 S.W. 2d 308, error ref. But a defendant is not entitled to a general submission of contributory negligence when the only issue of contributory negligence raised by the evidence has been submitted specially, as in this case. We cannot hold that the trial court erred in refusing to submit petitioner's requested special issues.

The case is affirmed.

Associate Justice McCall not sitting.

Opinion delivered July 11, 1956.

Rehearing overruled October 3, 1956.