**RIO GRANDE VALLEY SUGAR GROWERS, INC., Appellant,**

v.

**Ross CAMPESI, Appellee.**

No. 1335.

Court of Civil Appeals of Texas, Corpus Christi.

On Rehearing Feb. 28, 1979.

On Second Motion for Rehearing March 29, 1979.

records do not show which proceeding occurred first.

Neil Norquest, Ewers, Toothaker, Ewers, Abbott, Talbot, Hamilton & Jarvis, McAllen, for appellant.

Charles Murray, Atlas, Hall, Schwarz, Mills, Gurwitz & Bland, McAllen, for appellee.

## OPINION ON MOTION FOR REHEARING

NYE, Chief Justice.

The appellant as well as the appellee have filed motions for rehearing. The appellant has raised matters in its motion for rehearing that relate to the partial summary judgment grouped with arguments concerning the jury-tried portion of this case. Because of the confusion raised by appellant's brief and the attempted reply to such brief, we have withdrawn our original opinion and substitute this opinion for the original. The judgment of the trial court is affirmed in part and reversed and rendered in part. Both motions for rehearing are overruled.

This appeal is from a partial interlocutory summary judgment rendered prior to a jury trial and the trial court's final judgment covering both. The primary question concerns the validity of a liquidated damage clause contained in a marketing agreement between appellant, Rio Grande Valley Sugar Growers, Inc. (Association), and appellee, Ross Campesi. Campesi, the plaintiff below, filed suit against the Association seeking to recover moneys the Association allegedly wrongfully withheld from him. The Association counterclaimed for damages resulting from Campesi's alleged breach of the marketing agreement. The trial court granted Campesi's motion for summary judgment, holding that the liquidated damage provision in the contract was invalid. The case then proceeded to trial on the Association's alternate counterclaim for damages. In response to a single special issue, the jury found the Association's actual damages to be less than the amount of money the Association had withheld from Campesi. The trial court entered judgment awarding Campesi the net sum of $68,-173.64, which was the total amount ($129,-349.50) withheld by the Association, plus prejudgment interest ($26,516.64) on such amount, less the amount of damages ($87,-692.80) the jury found due to the Association. The Association brings this appeal, while Campesi brings forward certain cross-points of error.

The Association is a non-profit stock cooperative marketing association formed pursuant to the Texas Cooperative Marketing Act. It was formed in 1971 for the purpose of establishing a sugar cane industry in the Rio Grande Valley by harvesting, milling, processing and marketing sugar cane products from sugar cane produced and delivered to the Association by its members. One of the means used by the Association and its creditors to ensure a source of revenue and to secure repayment of a large sum of money which was borrowed by the Association was to require each member to execute a ten year marketing agreement. This required the members to grow a specific tonnage of sugar cane each year or pay damages in the event the specified tonnage was not produced. The contract provided that the Association

would pay the net proceeds due each member after deducting, among other items, a sum to cover the Association's fixed overhead costs and expenses for each year's operation.

Appellee Campesi became a member of the Association at its inception and executed a 10-year marketing agreement whereby Campesi agreed to raise and to deliver to the Association 26,250 tons of sugar cane on 625 acres each "grinding season." Campesi's total ton obligation was later reduced to 26,121.9 tons in accordance with federal production quotas. During the first grinding season, October 1973 through April 1974, Campesi produced only 252 tons on six acres. The Association gave Campesi credit for the six acres of sugar cane grown and then, in May of the following year, deducted $129,349.50 as liquidated damages from the amount due Campesi for the sugar cane he produced in the 1974–1975 (second) grinding season.

Campesi then brought this suit against the Association alleging that the Association had wrongfully withheld such sum from him. The Association defended on the basis that this deduction was authorized pursuant to a liquidated damage clause contained in paragraph 15(a) of the marketing agreement between the parties. The Association also filed a counterclaim seeking to recover its actual damages in the event that the trial court found that the Association had improperly withheld the sum from Campesi.

Prior to trial, Campesi filed a motion for summary judgment on the basis that paragraph 15(a) of the marketing agreement was void and unenforceable. He also filed a supplemental summary judgment motion requesting control of the deducted sum until entry of a final judgment on the basis that the marketing agreement did not permit the Association to make any deductions for an alleged breach of the marketing agreement. Campesi's original motion for summary judgment stated, in effect, that he had a right to recover the unauthorized deduction as a matter of law because: 1) paragraph 15(a) of the marketing agree-ment was void and illegal because authorization for the inclusion of such provision in the Association's marketing agreement was not contained in the Association's by-laws as required by Tex.Rev.Civ.Stat.Ann. art. 5753 (1958); 2) paragraph 15(a) was void and illegal because Article 5753 authorizes cooperative marketing associations to utilize liquidated damage clauses only in the event of a specific breach of the provisions regarding the sale, delivery or withholding of products, whereas the Association had withheld such sum from Campesi only because of his failure to grow sugar cane; and 3) the liquidated damage provision was void and of no force or effect because it operated to collect a penalty rather than as an attempt to approximate actual damages that are difficult to ascertain.

Campesi's supplemental motion alleged that "the Marketing Agreement in effect between plaintiff and defendant on May 15, 1975, contains no provision allowing a deduction for actual or liquidated damages from the amounts plaintiff is entitled to receive under said Agreement." Campesi further pled that "defendant is not entitled to make deductions for *liquidated or actual damages* from sums due plaintiff under the Marketing Agreement." In accordance with these allegations, Campesi prayed that the court grant to him immediate control and possession of the $129,349.50 withheld by the Association "until such date as defendant may obtain a judgment against Plaintiff for liquidated or actual damages."

These motions were supported by the Association's answers to certain interrogatories, wherein the Association admitted: 1) that Campesi was entitled to receive a total of $388,713.06 from the proceeds of the 1974–1975 (second) season; 2) that Campesi had been paid only $259,363.56 of this amount; 3) that the $129,349.50 difference was the result of Campesi's breach of the marketing agreement in the 1973–1974 (first) season; and 4) that such difference ($129,349.50) was withheld pursuant to paragraph 15(a) of the marketing agreement. Paragraph 15(a) provides, in relevant part, as follows:

"Inasmuch as the remedy at law would be inadequate and inasmuch as it is now and ever will be impractical and extremely difficult to determine the actual damage resulting to Association should Grower fail to deliver any sugar cane as herein provided, Grower hereby agrees to pay Association for all such sugar cane delivered, sold, consigned, withheld or marketed by or for him, or which he refuses to grow, other than in accordance with the terms hereof, the sum of FIVE DOLLARS ($5.00) per ton as liquidated damages for the breach of this contract . . ."

After a hearing, the trial court entered an order for partial summary judgment. The order granted Campesi's motion for summary judgment and declared Part 15(a) of the marketing agreement void. It also denied Campesi's supplemental motion for summary judgment, and refused him the temporary relief of recovering control of the deducted sum prior to final judgment. The case then proceeded to trial before a jury on the Association's counterclaim for actual damages. In response to the special issue, the jury found that the Association had incurred damages in the amount of $87,692.80 by Campesi's failure to plant his sugar cane.

The Association brings forward several points on appeal, primarily complaining of the trial court's order granting Campesi's partial summary judgment, but also complaining of the court's failure to allow the Association to plead or prove its attorney's fees as provided for in the marketing agreement, and the failure of the trial court to allow the Association prejudgment interest on the total damages or to allow such damages as an offset against the amount withheld prior to computing prejudgment interest awarded to Campesi. Campesi brings forward cross-assignments of error complaining of the trial court's failure to allow him to plead and prove attorney's fees and of the trial court's action in taxing the entire cost of the suit against him. Neither party complains of the jury's award of $87,-692.80 as damages due the Association.

The Association's first point of error which complains of the trial court's action in granting Campesi's motion for summary judgment requires us to keep in mind the familiar rules concerning summary judgments established by our Supreme Court: Rule 166–A, Texas Rules of Civil Procedure; *Valley Stockyards Company v. Kinsel,* 369 S.W.2d 19 (Tex.Sup.1963); *Gaines v. Hamman,* 163 Tex. 618, 358 S.W.2d 557 (1962); *Gulbenkian v. Penn,* 151 Tex. 412, 252 S.W.2d 929 (1952).

First we consider the question of whether or not the Association is required to include a provision for liquidated damages in both: 1) the Association's marketing agreements, and 2) the Association's by-laws. The following language contained in Article 5753 is important:

"The by-laws *and* the marketing contract *may fix,* as liquidated damages, specific sums to be paid by the member or stockholder to the association upon the breach by him of any provisions of the marketing contract regarding the sale or delivery or withholding of the products; . . ." (Emphasis added).

The Association contends that the above language should be construed to mean that an association may (if it chooses) provide for liquidated damages in its by-laws and it may (if it chooses) provide for them in its marketing agreements, but it is not necessary to provide for them in both the by-laws and in the marketing agreement. Campesi, on the other hand, contends that the above language requires any association which intends to utilize a liquidated damage clause, to provide (specifically) for such in both the by-laws and in the marketing contract.

The fundamental and dominant rule controlling the construction of the statute is to ascertain and effectuate the intention of the Legislature. *Calvert v. Texas Pipe Line Company,* 517 S.W.2d 777, 780 (Tex.Sup.1974); Art. 10 § 6, Tex.Rev.Civ. Stat.Ann. (1969). The intention of the Legislature should not be determined or derived from isolated portions of the Act in question. *Calvert v. Texas Pipe Line Company,* 517 S.W.2d 777, 781 (Tex.Sup.1974); *City of*

*Mason v. West Texas Utilities Co.,* 150 Tex. 18, 237 S.W.2d 273 (1951); *Maddox v. Flato,* 423 S.W.2d 371, 375 (Tex.Civ.App.—Corpus Christi 1967, writ ref'd n. r. e.). Because every word of the statute is presumed to have been used for a purpose, we must give effect to each sentence, clause, phrase and word if reasonably possible. *Eddins-Walcher Butane Company v. Calvert,* 156 Tex. 587, 298 S.W.2d 93, 96 (1957).

■ Articles 5753 and 5762 are interrelated and should be considered together in ascertaining the Legislature's intent. Article 5753 pertains to marketing contracts and authorizes an association and its members to enter into ten year marketing agreements which would require the members to sell all or any specified portion of their agricultural products exclusively to or through the association. The language of this article specifies several matters for which the marketing contract *"may provide."* With regard to liquidated damage clauses, however, Article 5753 states that "[t]he by-laws and the marketing contract may fix, as liquidated damages, specific sums . . . and any such provisions shall be valid and enforceable in the courts of this State." Article 5762 states:

". . . nor shall the marketing contracts or agreements between the association and its members, nor any agreements authorized by this chapter, be considered illegal or in restraint of trade."

This provision of Article 5762 evidences the Legislature's concern with a possible conflict between the anti-trust laws and the broad powers to regulate and control the production and marketing of agricultural products conferred upon associations by the Marketing Act. *State v. Standard Oil Company,* 130 Tex. 313, 107 S.W.2d 550 (1937). Article 5753 is permissive. It provides that the association *"may"* include in its marketing contract . . . etc.

■ Article 5753 contains five sentences. The first sentence permits an association to contract with members to sell products to the association exclusively as long as the term of such a contract does not exceed ten years. The second sentence again refers only to the marketing contract. This sentence lists three provisions, including a liquidated damage provision, which may be included in both the marketing contract and in the by-laws. Again, the association is authorized but not required to provide for liquidated damages. However, we believe that if an association chooses to establish a liquidated damage clause in its contract, the Legislature intended to require such an association to set out such provisions in both its by-laws and in the marketing contract.

■ The statute says: "The by-laws *and* the marketing contract may fix . . ." As a general rule, the words "and" and "or" are not interchangeable terms, but they are used in the structure of our language for entirely variant purposes. The word "and" is generally used strictly for a conjunctive purpose, while the use of the word "or" is for a disjunctive purpose. Sometimes, however, in order to effectuate the intention of the Legislature, the word "and" is sometimes construed to mean "or." This construction, however, is resorted to only in limited circumstances. As stated by our Supreme Court: "This construction, however, is never resorted to except for strong reasons . . ." *Board of Insurance Commissioners of Texas v. Guardian Life Insurance Co. of Texas,* 142 Tex. 630, 180 S.W.2d 906, 908 (1944).

■ One obvious purpose of requiring a liquidated damage provision to appear in both the by-laws and the marketing contract is to necessitate shareholder approval. Under Article 5746, a vote of the shareholders is necessary to adopt the by-laws, but shareholder approval is not necessary for the promulgation of a marketing contract. Where the language of a statute is unambiguous and its meanings are clear, we should give effect to the statute according to its terms. *Board of Insurance Commissioners of Texas v. Guardian Life Insurance Company of Texas,* 142 Tex. 630, 180 S.W.2d 906, 909 (1944); *Vaughan v. Southwestern Surety Ins. Co.,* 109 Tex. 298, 206 S.W. 920, 921 (1918). We are of the opinion that the Association was required to pro-

vide for a liquidated damage clause in its by-laws in order to make any such provision in its marketing agreement valid. By having such authority in the by-laws, everyone would thus be protected. The summary judgment evidence established that the Association had failed to provide for the use of such liquidated damage clause in its by-laws. The trial court properly concluded that the liquidated damage provision was void and had no force or effect.

■ The trial court could have reached the same conclusion for yet another reason. Article 5753 expressly provides that the marketing contract may prescribe liquidated damages for the breach of any provision of the marketing contract regarding *"the sale or delivery or withholding of the products."* (Emphasis added). This express language presupposes the availability (to the breaching member) of the product in question and his wrongful withholding of the product or his failure to sell or deliver the product in accordance with the terms of the contract. Here, the sugar cane in question was not available to Campesi. He did not withhold any portion of the sugar cane from the six acres of seed cane he did grow. He did not sell or deliver sugar cane which was available in contravention of the contract. Compare *National Farmers Organization v. Smith*, 526 S.W.2d 759 (Tex.Civ. App.—Corpus Christi 1975, no writ).

The Association's points of error two and three are as follows:

(2) "The trial court erred in refusing to give effect to Paragraph 7(b) of the Marketing Agreement, and in refusing to construe it to reflect the true intent of the parties."

(3) "The trial court erred in refusing to declare that Paragraph 7(b) of the Marketing Agreement was ambiguous and in refusing to admit the testimony of the witnesses Art Beckwith and John Hardwicke for the purpose of resolving such ambiguity."

These points of error are grouped by the appellant for argument and authority purposes with point of error one which complained of the trial court's action in granting Campesi's motion for summary judgment. The arguments pertaining to all three points of error were then grouped under four major headings ("A," "B," "C," and "D"), one for each set of arguments. The arguments listed under heading "C" are the only arguments specifically mentioning paragraph 7(b). (See points of error two and three above). Heading "C" states as follows:

"C. Paragraph 7(b): In addition to its right to assess Appellee liquidated damages, Appellant [the Association] was entitled, under Paragraph 7(b) of the marketing agreement, to withhold from Appellee's 1974 sugar cane proceeds his pro rata share of the organization's operating and maintenance expenses for the year 1973."

The arguments contained under this specific heading are to the effect that the trial court erred in granting Campesi's motion for summary judgment because the Association was authorized under paragraph 7(b) of the marketing agreement to deduct Campesi's pro rata portion of the Association's fixed costs for the 1973–1974 grinding season (first year) and that these costs exceeded the amount the Association deducted pursuant to the liquidated damage clause contained in paragraph 15(a). The Association then directs our attention to certain testimony contained in the statement of facts to the effect that Campesi's pro rata portion of such fixed costs exceeded the amount the Association withheld pursuant to paragraph 15(a) and concludes that Campesi was therefore "not entitled to a Summary Judgment that the association pay over to him any moneys which it had withheld from its 1974 crop proceeds." The Association also argues that the trial court further erred when, during the trial of the issues remaining after Campesi's motion for summary judgment was granted, it refused to admit certain testimony relating to alleged ambiguities contained in paragraph 7(b).

■ It is evident that points of error two and three and the arguments and authorities contained thereunder do not meet

the minimal briefing rules. See Rule 418, Texas Rules of Civil Procedure. Arguments pertaining to more than one point of error may be grouped where they are germane to one another. These points of error, however, complain of 1) errors the trial court allegedly committed in granting Campesi's motion for summary judgment, and 2) errors the trial court allegedly committed during the course of the trial of the remaining issues in the case. Although the arguments both concern paragraph 7(b), the trial court's action in granting the summary judgment and its action during the course of the trial are separate and distinct actions. In addition, arguments contained under these points of error are so general that it is difficult to determine the precise nature of the Association's contentions. Nevertheless, in view of the liberal construction that should be given to the briefing rules, we consider the Association's points of error two and three in light of the arguments and authorities contained thereunder as we understand them.

First we consider the Association's arguments concerning the trial court's action in granting Campesi's motion for summary judgment and then, the trial court's action during the trial of the remaining issues.

Paragraph 7(b) provides, in relevant part, as follows:

"Association agrees to sell, either in the natural or processed state, such sugar cane [i. e., the sugar cane raised and delivered by the grower], together with the sugar cane delivered by other Growers, and to pay over ratably the net amount received therefrom as payment in full to Grower, after making deductions to cover . . . (b) organization, operating and maintenance expenses . ."

There are several problems concerning the Association's argument as to the applicability of paragraph 7(b) to the trial court's action in granting Campesi's original motion for summary judgment and in denying Campesi's supplemental motion for summary judgment. Paragraph 7(b) of the marketing agreement was unrelated to the issues that were before the trial court pursuant to Campesi's original motion. The Association's answers to certain interrogatories clearly establish that the disputed $129,349.50 deduction was made by the Association in reliance solely upon paragraph 15(a). Campesi's motion for summary judgment was predicated on the grounds that the Association's reliance on paragraph 15(a) was misplaced because the paragraph was void and unenforceable. At the time of the summary judgment hearing, the Association's pleadings, including its answer to Campesi's motion for summary judgment, did not raise the applicability of paragraph 7(b). The Association's answer alleged that paragraph 15(a) was valid and enforceable. The Association's counterclaim alleged, in effect, that even should the trial court find that the Association's action in deducting the disputed amount pursuant to paragraph 15(a) was invalid, that the Association did, in fact, suffer some actual damages, including Campesi's share of several enumerated fixed costs as the result of his failure to grow and to deliver the specified amount of sugar cane during the first grinding season.

Campesi's supplemental motion for summary judgment was filed for the purpose of obtaining control of the funds previously withheld by the Association until such time the Association's claim for damages was adjudicated. The trial court refused. The court's summary judgment specifically overruled Campesi's supplemental motion for summary judgment. In so doing, the court stated specifically:

"IT IS FURTHER ORDERED, ADJUDGED AND DECREED *that the Defendant was without authority to make any deductions for damages for the alleged breach of contract by Plaintiff for amounts payable to Plaintiff by Defendant* and that said deduction of $129,349.50 was wrongful and without authority but Plaintiff is not entitled as a matter of temporary relief to recover control of the deducted sum prior to final judgment disposing of all the issues in this cause, and therefore, Plaintiff's Supplemental Motion for Summary Judgment be and it is hereby overruled." (Emphasis added).

The Association apparently bases its contention that the existence of paragraph 7(b) should have precluded the summary judgment upon the emphasized portion of the court's order.

This case was tried prior to the amendments to Rule 166–A. We recognize the general rules cited by the Association and stated by our Supreme Court in *Womack v. Allstate Insurance Co.*, 156 Tex. 467, 296 S.W.2d 233, 237 (1956), as follows:

"The trial court will normally look to the pleadings to determine the issues that may exist in the case, but when the depositions, admissions or affidavits disclose facts which show that an amendment to the pleadings of the opposite party will render the position of the moving party insupportable under substantive law, it cannot be said that the latter has established his right to judgment as a matter of law."

In this case, however, even an amendment to the pleadings which asserted that the deduction made by the Association was valid pursuant to paragraph 7(b) would have no effect on the validity of the trial court's action in granting the motion for summary judgment on the basis that paragraph 15(a) was invalid. The language in the trial court's order granting the summary judgment (to the effect that the Association had no authority under any provision of the contract to make the alleged deductions), in our view, is no more than a statement of the trial court's opinion on the matter. If the trial court's order had stated that Campesi's supplemental motion for summary judgment should be overruled on the basis that the Association was authorized to deduct damages pursuant to other paragraphs of the Marketing Agreement, the result of the summary judgment and the remaining fact issues in the case would have been the same: 1) Campesi would not be entitled to control the amount so deducted until a final disposition of the cause; and 2) the amount of money the Association would be entitled to retain from the amount withheld would be a fact issue (because the specific amount withheld, by the Association's own admission, was computed solely upon the void paragraph 15(a)).

In addition, the trial court explicitly recognized that other factual determinations remained. In its summary judgment, the trial court stated, in part, as follows:

"It further appears to the Court that there remains pending in this cause, . . . defendant's Counter-Claim."

The allegations contained in the Association's counterclaim included those items the Association contended were properly deducted pursuant to paragraph 7(b) of the Marketing Agreement.

The underlying purpose of Rule 166–A is to eliminate patently unmeritorious claims or untenable defenses, and the rule is not intended to deprive the litigants of their right to a full hearing on the merits of any real issue of fact. *In re Price's Estate v. State Nat. Bank of El Paso*, 375 S.W.2d 900 (Tex.Sup.1964); *Gulbenkian v. Penn*, 151 Tex. 412, 252 S.W.2d 929 (1953). Thus, a motion for summary judgment will not be defeated by the existence of a dispute upon issues that are immaterial. 4 McDonald, Texas Civil Practice, § 17.26.12, p. 171 (1971). Here, the case proceeded to trial on the only remaining fact issues.

We conclude that the trial court's summary judgment was proper, and that the trial court properly delineated the issues of fact that remained for the jury's consideration. The existence of paragraph 7(b), or other similar paragraphs in the marketing agreement, were unrelated to the summary judgment issues. The trial court's reference to the Association's lack of authority to make *any* deduction under the marketing agreement is surplusage, and is not to be interpreted as a construction of any portion of the marketing agreement other than paragraph 15(a). The summary judgment is accordingly affirmed.

We turn next to the Association's arguments applicable to points of error two and three as they relate to the trial of the remaining fact issues in the case, including the Association's cross-action against Campesi. The Association complains that the trial court erred in refusing to admit parol

testimony during the trial regarding an alleged ambiguity of paragraph 7(b). The relevant portion of the statement of facts contains only the argument of appellant's counsel and not the substance of the evidence the Association sought to introduce. According to the Association's counsel, the issue concerning the fixed costs under paragraph 7(b) was: "when they are going to have to be paid." Paragraph 7(b) contained no expressed time. However, the Association's position, as we understand it, was that paragraph 7(b) authorized the Association to deduct a member's share of such fixed operating expenses incurred in the previous year from the proceeds otherwise due the members for the next growing season without having to file a suit to collect a member's fixed share for the year in which he failed to grow a crop. The trial court refused to hear the proffered testimony. Thereafter, the Association failed to except to such ruling or to preserve, in any manner, the substance of the testimony it sought to introduce.

As a general rule, error is not shown in the exclusion of the evidence unless the complaining party brings before the appellate court a record that shows clearly not only what the evidence would have been if admitted, but also its relevancy. The complaining party must except to the trial court's ruling excluding the testimony, and in addition, preserve the substance of such testimony in the record. *Swinney v. Winters*, 532 S.W.2d 396, 402 (Tex.Civ.App.—San Antonio 1975, writ ref'd n. r. e.); *Texas Associates v. Joe Bland Construction Co.*, 222 S.W.2d 413 (Tex.Civ.App.—Austin 1949, writ ref'd n. r. e.); Rule 372, Texas Rules of Civil Procedure. The complaining party has the burden to show reversible error by demonstrating that the exclusion of evidence was reasonably calculated to cause and probably did cause the rendition of an improper verdict and judgment. *Gomez Leon v. State*, 426 S.W.2d 562 (Tex.Sup.1968); *Ryder Tank Lines, Inc. v. Bentley*, 397 S.W.2d 914 (Tex.Civ.App.—Fort Worth 1965, writ ref'd n. r. e.).

In an apparent effort to show injury by the exclusion of this evidence, the Association generally suggests that the exclusion of this evidence probably affected the final outcome of this case and that it was precluded from submitting a special issue concerning Campesi's share of the fixed operating expenses for the 1973–1974 (first year) grinding season. The record does not support this contention.

During his argument to the court, the Association's counsel acknowledged that at least two witnesses, including Campesi, had testified, in effect, that it was their understanding that each member was obligated to pay his pro rata part of the fixed operating expenses. The statement of facts is replete with other evidence concerning paragraph 7(b), including the measure of the Association's fixed costs for the year in question.

We note that the Association did not complain that the trial court, in any way, refused to permit the Association to present evidence concerning the amount of its fixed costs and operating expenses during the period of time in question, nor Campesi's share thereof. One special issue concerning the Association's measure of recovery was submitted to the jury. In response to that issue, the jury awarded the Association damages in the amount of $87,692.80. The Association does not complain that the trial court refused to submit any other damage issues to the jury that were requested by the Association. Nor does the Association complain of the jury's answer on legal or factual sufficiency grounds. The Association, apparently, failed to convince the jury that its damages, including Campesi's pro rata portion of its fixed costs for the 1973–1974 grinding season (first year), were equal to or exceeded the amount the Association had previously deducted pursuant to paragraph 15(a).

We have carefully considered each of the Association's arguments pertaining to points of error two and three as we understand them, and conclude they are without merit. There is yet another reason, however, why the Association's points of

error two and three must be overruled. The Association's amended motion for new trial does not mention paragraph 7(b) of the marketing agreement nor does it complain of the trial court's failure to admit parol testimony to explain the alleged ambiguity of that paragraph. This case went to trial on April 11, 1977, and the trial court signed its final judgment on October 25, 1977. The Association timely filed a motion for new trial, and timely filed an amended motion for new trial on November 18, 1977. At all of these times, Rule 324 of the Texas Rules of Civil Procedure provided that a contention in a motion for new trial is prerequisite to any appeal except in specified instances (none of which are applicable to this case). Although we recognize that Rule 324 has now been amended to dispense with the necessity for a motion for new trial in most instances, the effective date of this amendment was January 1, 1978, which is subsequent to the time the Association was required to perfect its points of error for appellate review by filing a motion for new trial. We hold that the Association has waived its right to complain of these alleged errors on appeal and that the amended Rule 324 has no application to this case. *Wagner v. Foster*, 161 Tex. 333, 341 S.W.2d 887 (1960). See *National Lloyds Ins. Co. v. McCasland*, 566 S.W.2d 565, 568 (Tex.Sup. 1978). Appellant's points of error one through three are overruled.

In cross-point of error number one, Campesi complains that the trial court erred in sustaining the Association's special exception to his claim for attorney's fees. In point of error six, the Association also complains that the trial court erred in sustaining Campesi's special exception to its claim for attorney's fees. There is no showing, however, in the record before us that the trial court made the ruling that is complained of by the parties. Both the Association and Campesi filed several special exceptions. There are two pretrial orders contained in the transcript. One pretrial order sustained one of the Association's special exceptions to Campesi's pleadings. Campesi does not complain of this order. The second pretrial order which contains numerous rulings, including the ruling contained in the first pretrial order, was approved as to form and signed by the attorneys for both parties, but it was not approved or signed by the trial judge. There is absolutely nothing in the record to indicate the trial judge intended this second pretrial order to be the trial court's ruling. The final judgment does not recite that the trial court made certain rulings on the parties' special exception.

As a general rule, reversible error must be disclosed by the record in a case on appeal. *Texas & New Orleans Railroad Co. v. Hayes*, 156 Tex. 148, 293 S.W.2d 484, 486, 487 (1956). A trial court's ruling on the sufficiency of the pleadings should be shown by a separate order or encompassed in the judgment and entered on the minutes. *Gulf Paving Co. v. Lofstedt*, 144 Tex. 17, 188 S.W.2d 155, 159 (1945); *Texas Steel Co. v. Douglas*, 533 S.W.2d 111, 117–118 (Tex.Civ.App.—Fort Worth 1976, writ ref'd n. r. e.); *Owen v. Owens Country Sausage, Inc.*, 493 S.W.2d 653, 654 (Tex.Civ.App.—Amarillo 1973, no writ); *American Pozzolan Corp. v. Desert Trucking Co.*, 450 S.W.2d 433 (Tex.Civ.App.—San Antonio 1970, writ ref'd n. r. e.); *Alcazar v. Southwestern Bell Telephone Co.*, 353 S.W.2d 933 (Tex.Civ.App.—Austin 1962, no writ). Special exceptions to pleadings that are not called to the attention of the trial court and on which the record does not show the trial court acted are waived. *Texas Steel Co. v. Douglas*, 533 S.W.2d 111, 118 (Tex.Civ.App.—Fort Worth 1976, writ ref'd n. r. e.); *Pure Oil Company v. Fowler*, 302 S.W.2d 461 (Tex.Civ.App.—Dallas 1957, writ ref'd n. r. e.); *Cook v. Jaynes*, 366 S.W.2d 646 (Tex.Civ.App.—Dallas 1963, no writ); *Rothchild v. Fannin Bank*, 407 S.W.2d 878 (Tex.Civ.App.—Texarkana 1966, writ ref'd n. r. e.).

Even if we were to consider the merits of his contention, Campesi's cross-point would be overruled. As a general rule, attorney's fees incurred by parties to litigation are not recoverable against an adverse party, unless such right is provided for by statute or by a contract between the

parties. *New Amsterdam Casualty Company v. Texas Industries, Inc.*, 414 S.W.2d 914 (Tex.Sup.1967). Inasmuch as there is no provision in the contract of the parties for the payment by the Association of attorney's fees, Campesi's claim, if allowed at all, is governed by Article 2226, Tex.Rev.Civ. Stat.Ann. (1971). Article 2226, which was in effect at the time this case was tried, provides, in relevant part, as follows:

"Any person having a valid claim against a person or corporation . . . or suits founded upon a sworn account or accounts, may present the same to such person or corporation . . . and if, at the expiration of thirty (30) days thereafter, the claim has not been paid or satisfied, and he should finally obtain judgment for any amount thereof as presented for payment to such person or corporation, he may also recover, in addition to his claim and costs, a reasonable amount as attorney's fees, if represented by an attorney."

Article 2226 is penal in character, and must be strictly construed. *Van Zandt v. Fort Worth Press*, 359 S.W.2d 893 (Tex.Sup. 1962). Campesi contends that his suit against the Association is a suit on a sworn account and, therefore, the trial court erred in sustaining the Association's special exceptions directed toward his claim for attorney's fees. We do not agree.

It has been said that a sworn account is defined according to its popular sense and applies only to:

"transactions between persons, in which there is a sale upon one side and a purchase upon the other, whereby title to *personal* property passes from one to the other, and the relation of debtor and creditor is thereby created by general course of dealing (which may include only one transaction between the parties). It does not mean transactions between parties resting upon special contract." *Meaders v. Biskamp*, 159 Tex. 79, 316 S.W.2d 75, 78 (1958). (Emphasis in original).

A "special contract," on the other hand, is one with particular provisions or stipulations not found in an ordinary contract relating to the same subject matter. These provisions are such that, if omitted from the ordinary contract, the law will never supply. *Eisenbeck v. Buttgen*, 450 S.W.2d 696, 702 (Tex.Civ.App.—Dallas 1970, no writ); *Pines California, Inc. v. Miller*, 446 S.W.2d 91, 95 (Tex.Civ.App.—Eastland 1969, no writ); 17 C.J.S. Contracts § 10, p. 584 (1963).

We are of the opinion that Campesi's suit against the Association was based on a special contract and not a sworn account. Campesi's trial petition alleged, in essence, that the Association had wrongfully withheld from him the sum of $129,349.50 pursuant to an unenforceable liquidated damage clause contained in the written marketing agreement between the parties. The Association defended on the basis that the liquidated damage provision was valid and enforceable and, in the alternative, counterclaimed for actual damages based on its alleged contractual right to recover Campesi's portion of its fixed expenses for the year in question on still another provision of the contract. The contractual provisions in dispute are such that a court would not supply them if they were omitted. C.f., *Langdeau v. Bouknight*, 162 Tex. 42, 344 S.W.2d 435, 441 (1961), affirming, 333 S.W.2d 670 (Tex.Civ.App.—Austin 1959); *Robinson v. Faulkner*, 422 S.W.2d 209 (Tex. Civ.App.—Dallas 1967, writ ref'd n. r. e.); *Ball v. Cooper-Stanley Co., Inc.*, 413 S.W.2d 467 (Tex.Civ.App.—Dallas 1967, no writ).

■ This case was tried prior to the effective date of the amendment to Article 2226 which now authorizes recovery of attorney's fees to the prevailing party in a properly brought suit on an oral or written contract. Tex.Rev.Civ.Stat.Ann. art. 2226 (Supp.1978). We cannot and do not give this statutory amendment retroactive effect. *Government Personnel Mutual Life Ins. Co. v. Wear*, 151 Tex. 454, 251 S.W.2d 525 (1952); *Texas Gas Corp. v. Hankamer*, 326 S.W.2d 944 (Tex.Civ.App.—Houston 1959, writ ref'd n. r. e.).

■ We would also overrule the Association's complaint if we considered the same

on the merits because recovery of attorney's fees was not included in the Association's by-laws as required by Article 5753, Tex. Rev.Civ.Stat.Ann. (1958). Campesi's cross-point of error one is overruled. The Association's sixth point of error is overruled for the additional reason that the Association failed to include this complaint in its motion for new trial.

The Association pled in its counterclaim (in the event that the trial court found paragraph 15(a) of the marketing agreement [liquidated damage clause] to be void and unenforceable), that it had suffered actual damages by reason of Campesi's failure to produce his allotted acreage of sugar cane for the 1973–1974 (first) grinding season. In response to a single special issue, the jury found that the Association's actual damages were $87,692.80. The trial court entered its final judgment awarding Campesi a net amount of $68,173.64. In arriving at this amount in the final judgment, the trial court awarded Campesi the principal amount withheld by the Association ($129,349.50) together with interest on that amount ($26,516.64) computed from the date of withholding until judgment was rendered, and awarded the Association its principal amount of damages as found by the jury but without interest.

In point of error four, the Association contends that the trial court erred in refusing to award it prejudgment interest upon the amount of damages found by the jury.

Both parties rely on the rules set forth by the Supreme Court in *Watkins v. Junker*, 90 Tex. 584, 40 S.W. 11 (1897). In that case, the cross-plaintiff recovered damages in a cross-action for breach of contract in failing to furnish dredge boats as stipulated in the contract and the cross-defendant objected to the recovery of interest before judgment on the ground that the damages were unliquidated. The Supreme Court, in holding cross-plaintiff entitled to interest before judgment as part of his damages, said:

"It is true that interest, strictly speaking, exists only by statutory law, but it is likewise true that courts have recognized the fact that compensation for detention of that which is due on account of injury inflicted is an element of damages necessary to the complete indemnity of the injured party;

\* \* \* \* \* \*

Interest, as damages, may be allowed upon unliquidated demands, whether they arise out of a breach of contract or out of a tort.

\* \* \* \* \* \*

If one takes possession of the horse of another, and withholds it from the owner, compensation for the value of the use of the horse during the time is a legal right, and no court would hesitate to instruct the jury to so find, and we can see no difference between the right to be compensated for detaining a horse worth $100, and the right to be compensated for the detention of $100, the value of the horse, in case he was killed or converted to the use of the taker."

After a full discussion, the court laid down the rule that interest should be allowed as damages where the measure of recovery is fixed by the conditions existing at the time that the injury is inflicted. In such a case, the person entitled to recover has also the right to have compensation for the detention of the money to which he is entitled by reason of the wrong done to him. *Watkins v. Junker*, 90 Tex. 584, 40 S.W. 11, 12 (1897). These principles have been reaffirmed by the Supreme Court. See *Phillips Petroleum Co. v. Stahl Petroleum Co.*, 569 S.W.2d 480 (Tex.Sup.1978); *Hayek v. Western Steel Co.*, 478 S.W.2d 786 (Tex.Sup.1972); *Texas Company v. State*, 154 Tex. 494, 281 S.W.2d 83 (1955). If the measure of damages is determinable at the time of the injury, interest is properly awarded from the time of such injury and is added by the court to the amount of damages in rendering judgment. *McDaniel v. Tucker*, 520 S.W.2d 543, 549 (Tex.Civ.App. —Corpus Christi 1975, no writ); *Reed v. Fulton*, 384 S.W.2d 173 (Tex.Civ.App.—Corpus Christi 1964, writ ref'd n. r. e.); *Metal Structures Corporation v. Plains Textiles*,

*Inc.*, 470 S.W.2d 93 (Tex.Civ.App.—Amarillo 1971, writ ref'd n. r. e.); *Beck v. Lawler*, 422 S.W.2d 816 (Tex.Civ.App.—Fort Worth 1967, writ ref'd n. r. e.).

The marketing contract does not set a definite time for the Association to make the appropriate deductions and to compute the net proceeds due each grower. The contract, however, clearly implies that such computations will not be made until after the grinding season at the end of April of each year.

Campesi's contractual liability for such fixed expenses did not occur until sometime after the end of the 1973–1974 grinding season when all the pertinent computations had been made, and the other growers had to pay their portion of such costs through the appropriate deductions made by the Association. Cf., *Hayek v. Western Steel Co.*, 478 S.W.2d 786, 795–96 (Tex.Sup.1972); *Davidson v. Clearman*, 391 S.W.2d 48, 51–52 (Tex.Sup.1965); *Gulf States Paint Co. v. Kornblee Co.*, 390 S.W.2d 356 (Tex.Civ.App. —Texarkana 1965, writ ref'd n. r. e.).

█ The Association contends, in the alternative (in point of error number five), that the trial court erred by failing to subtract the Association's damages as found by the jury from Campesi's summary judgment recovery and then calculating interest due and owing Campesi on the balance. We agree with this solution.

The Association is entitled to have the damages awarded by the jury ($87,692.80) deducted from Campesi's recovery of $129,-349.50 with prejudgment interest computed only on the remaining balance of $41,656.70. See *Nalle v. Harrell*, 118 Tex. 149, 12 S.W.2d 550 (Tex.Com.App.1929); *Cage Brothers v. Cage*, 382 S.W.2d 169 (Tex.Civ. App.—San Antonio 1964, writ ref'd n. r. e.); *Dines Building Co. v. Cherry*, 49 S.W.2d 913 (Tex.Civ.App.—Dallas 1932, writ dism'd); *Brown v. Montgomery*, 19 Tex.Civ.App. 548, 47 S.W. 803 (1898, writ ref'd); Rules 97, 302, Texas Rules of Civil Procedure.

This result is particularly appropriate in this instance because, although the Association wrongfully withheld this sum from Campesi, he did in fact owe his proportionate contribution to the Association's fixed expenses for the 1973–1974 grinding season even though he did not produce sugar cane for that season. The Association sought recovery on this theory in its counterclaim, and Campesi does not contest the Association's right to claim such damages. Therefore, it would be inequitable to allow Campesi to recover interest on the entire amount the Association withheld when the Association was rightfully entitled to Campesi's share of its fixed costs. Appellant's point of error number five is sustained in this respect.

█ In cross-point numbers two and three, Campesi contends that the trial court erred: 1) in taxing the entire cost of the suit against him because he was the prevailing party and because there was no good cause existing for taxing costs against him otherwise; and 2) in the alternative, that even if good cause did exist (for taxing the costs against him), the action of the trial court was erroneous because such reason was not stated on the record. We agree with these contentions.

Rule 131 of the Texas Rules of Civil Procedure provides that the "successful party to a suit shall recover of his adversary all costs incurred therein, except as otherwise provided." Rule 141 vests considerable discretion in the trial judge in this matter by providing that the "court may, *for good cause, to be stated on the record*, adjudge the costs otherwise than as provided by law or these rules." (Emphasis added). In this case, the Association asserted a counterclaim for actual damages sustained by Campesi's breach of the marketing agreement and the jury awarded the Association damages. Final judgment, however, was rendered in favor of Campesi whose recovery on his action against the Association exceeded the recovery awarded to the Association. Rule 303 governs this situation:

"Whenever a counterclaim is pleaded, the party in whose favor final judgment is rendered shall also recover the costs, unless it be made to appear on the trial that the counter claim of the defendant was

acquired after the commencement of the suit, in which case, if the plaintiff establishes a claim existing at the commencement of the suit, he shall recover his costs."

In this case, the Association's cause of action asserted in the counterclaim existed prior to the commencement of Campesi's suit. See *Gateley v. Humphrey*, 247 S.W.2d 919 (Tex.Civ.App.—Dallas 1952), certified questions answered, 151 Tex. 588, 254 S.W.2d 98 (1952), question conformed to, 254 S.W.2d 571 (Tex.Civ.App.—Dallas 1953); *Duvall v. Clark*, 158 S.W.2d 565 (Tex.Civ.App.—Waco 1941, writ ref'd w. o. m.); *Masterson v. F. W. Heitmann & Co.*, 38 Tex.Civ.App. 476, 87 S.W. 227 (1905, writ ref'd); *Downey v. Hatter*, 48 S.W. 32, 34 (Tex.Civ.App.1898, no writ); *Brown v. Montgomery*, 19 Tex.Civ.App. 548, 47 S.W. 803 (1898, writ ref'd).

We reverse the judgment of the trial court insofar as it charges Campesi with the costs of the trial, and render judgment directing that the Association instead of Campesi be charged with such costs in accordance with Rule 303. See *Siepert v. Brewer*, 433 S.W.2d 773 (Tex.Civ.App.—Texarkana 1968, writ ref'd n. r. e.). Rule 434, T.R.C.P.

To recapitulate: We affirm the trial court's summary judgment entered in favor of Campesi. That portion of the final judgment which awarded Campesi prejudgment interest on the sum of $129,349.50 prior to the deduction of the damages of $87,692.80 due the Association is reversed and judgment is here rendered that Campesi be awarded prejudgment interest only on the balance owed of $41,656.70 with interest at 6% from the 15th day of May, 1975, to date of the trial court's judgment, and 9% thereafter. That portion of the final judgment assessing all costs against Campesi is also reversed and judgment here rendered that such costs in the trial court be adjudged against the Association. In all other respects, the judgment of the trial court is affirmed. The costs on appeal are assessed 80% against the appellant, and 20% against the appellee, Campesi.

AFFIRMED IN PART, AND REVERSED AND RENDERED IN PART.

## OPINION ON SECOND MOTIONS FOR REHEARING

Appellant Rio Grande Valley Sugar Growers, Inc. and appellee Ross Campesi have filed second motions for rehearing. In Campesi's second motion for rehearing, he again complains that the trial court erred by failing to calculate prejudgment interest due him after September 1, 1975, at the rate of nine per cent per annum.

As stated in the above opinion, the trial court entered its final judgment awarding Campesi a net recovery of $68,173.64. In determining this net amount, the trial court awarded Campesi the principal amount withheld by the Association ($129,349.50) together with prejudgment interest on that amount computed from the date of withholding until the date judgment was rendered ($26,516.64), and deducted from the sum of Campesi's awards, the Associations principal amount of damages as found by the jury ($87,692.80). On appeal, we sustain the Association's contention that the trial court erred by failing to allow as an offset the Association's damages as found by the jury from the principal amount due Campesi pursuant to the summary judgment recovery *before* calculating the prejudgment interest due Campesi upon the remaining balance alone. Pursuant to our holding, Campesi became entitled to receive prejudgment interest on the balance of $41,656.70, and not $129,349.50. Thereafter, it became incumbent upon this Court, pursuant to Rule 434, Texas Rules of Civil Procedure, to enter the judgment the trial court should have entered in this respect.

Until his motion for rehearing, we could not determine with absolute assurance what rate of interest the trial court had utilized to compute the prejudgment interest sum. We awarded interest computed on an annual rate of six per cent pursuant to Tex.Rev. Civ.Stat.Ann. art. 5069–1.03 (1971) on the basis that Campesi (pursuant to a written contract), was seeking to recover the sum of $129,349.50 which the Association wrongfully withheld on March 15, 1975, from a total

sum of $388,713.06 which the Association admitted was otherwise due and payable to Campesi at that time in accordance with the terms of the written marketing agreement.

The trial court's judgment awarded the specified sum of $26,516.64 as prejudgment interest without indicating the annual interest rate it utilized to compute such sum. The record shows that in Campesi's motion for summary judgment, he prayed for recovery of prejudgment interest "at the legal rate." In his first supplemental petition and supplemental motion for summary judgment, he prayed for prejudgment interest at the rate of six per cent. On November 12, 1976, the trial judge entered the order granting Campesi partial summary judgment without specifying the actual rate at which prejudgment interest should be calculated. About five months after the entry of this order (April 5, 1977), Campesi filed his second amended original petition which, for the first time, prayed for prejudgment interest to be calculated at the rate of six per cent until September 1, 1975, and at a rate of nine per cent thereafter until the date of judgment.

The active pleadings as of the date the summary judgment was entered prayed for interest at the rate of six per cent or "at the legal rate." "Legal interest" is defined in Tex.Rev.Civ.Stat.Ann. art. 5069–1.01(b) (1971) as "that interest which is allowed by law when the parties to a contract have not agreed on any particular rate of interest" and this rate is six per cent by statute. See Tex.Rev.Civ.Stat.Ann. art. 5069–1.03 (1971).

Now Campesi contends that: 1) the trial court's interest award in the sum of $26,-516.64 was computed by utilizing a rate of six per cent per annum until "August 30 (sic), 1975" and nine per cent from September 1, 1975, until the date of judgment; 2) the Association waived its right to complain of the nine per cent rate utilized by the trial court to compute the interest due from September 1, 1975, until the date of judgment, because it failed to make a proper assignment of error on appeal; and 3) this Court erred by changing the rate of interest

as utilized by the trial court without a proper assignment of error.

It is a fundamental rule that the judgment of the trial court must conform to the pleadings, the evidence and verdict, if any. See Rule 301, T.R.C.P. The summary judgment pleadings requested interest at the rate of six per cent, and it was error for the trial court to award interest at a higher rate. In reversing that portion of the trial court's judgment based on proper assignments of error before us, and in entering the judgment the trial court should have entered pursuant to Rule 434, we entered a correct judgment as to that portion of the judgment that was necessarily reversed. In so entering such corrected judgment, this Court should not be relegated to repeating the errors made by the trial court, particularly where, as here, the error committed was not evident on the face of the record. Our entry of the judgment the trial court should have entered incidentally corrected the trial court's error as to interest.

There is still another basis for changing the error. Where such error is apparent on the face of the record, courts, in analogous situations, have found fundamental error to be present, particularly where the judgment entered violates a statute. See *McDaniel v. Miller*, 317 S.W.2d 546, 549 (Tex.Civ.App.—Waco 1958, no writ), disapproved on other grounds, *Phillips Petroleum Company v. Stahl Petroleum Company*, 569 S.W.2d 480 (Tex.Sup.1978); *ICT Insurance Company v. Gunn*, 294 S.W.2d 435, 444, 445 (Tex.Civ.App.—Waco 1956, writ ref'd n. r. e.); *South Texas Lloyds v. Bryant*, 137 S.W.2d 112 (Tex.Civ.App.—Beaumont 1940, error dism'd); *Fort Worth & D. C. Railway Co. v. Osborne*, 26 S.W. 274, 275 (Tex.Civ.App.1894, no writ); *Stephenson v. Luttrell*, 160 S.W. 666, 668 (Tex.Civ.App.—San Antonio 1913, rev'd on other grounds, 107 Tex. 320, 179 S.W. 260, 262–263 (1915). (We note that the *Stephenson* case may have been decided on the basis of error apparent on the face of the record prior to the amendment of an enactment of Rule 374 and not fundamental error).

Having considered all the points of error in both motions for rehearing and deciding that we have now properly disposed of the appeal in this case, the motions are accordingly overruled.